FILED16 MAR '26 10:35USDC-ORP

**EMANUEL MOIS**
Reg. No. 77348-097
FCI Sheridan
P.O. Box 5000
Sheridan, OR 97378
*Petitioner, Pro Se*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**
(Habeas Corpus – 28 U.S.C. § 2241)

**EMANUEL MOIS, Reg. No. 77348-097,**
Petitioner,

v.

**WARDEN, FCI SHERIDAN,**
Respondent.

Case No. ___3:26-cv-00513-CL___

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

**I. INTRODUCTION**

Petitioner, **Emanuel Mois**, respectfully submits this Petition for Writ of Habeas Corpus under **28 U.S.C. § 2241**, challenging the legality of his federal confinement and sentence imposed by the United States District Court for the Eastern District of California.

Petitioner asserts that his conviction and sentence were obtained in violation of his constitutional rights due to **ineffective assistance of counsel, prosecutorial misrepresentation, sentencing error, and due process violations,** each of which substantially affected the fairness and reliability of the proceedings.

Petitioner seeks review under the **§ 2255(e) "savings clause",** asserting that no other adequate remedy is available.

## II. JURISDICTION AND VENUE

This Court has jurisdiction under **28 U.S.C. §§ 2241 and 1331** because Petitioner is presently confined within the District of Oregon, at **FCI Sheridan**.

Venue is proper in this District as Petitioner challenges the execution and validity of his sentence while in federal custody.

Petitioner is currently serving a **292-month sentence** with **lifetime supervised release,** imposed on **June 18, 2019,** by the Hon. Kimberly J. Mueller, U.S. District Judge, Eastern District of California (Case No. 2:17-cr-00184-KJM).

## III. PROCEDURAL HISTORY

1. Petitioner was arrested on April 5, 2017, by Citrus Heights Police while under state parole supervision. His parole began on August 12, 2015, following a conviction under California Penal Code § 311.1(a). He was previously arrested on February 11, 2017, but released after the parole officer confirmed no violation.

2. The case was initially prosecuted in California state court as **possession** of child pornography. After Petitioner refused a **4–5 year plea offer** and sought discovery, the State District Attorney threatened to **"send the case to the feds".** The case was later transferred to federal court and charged as **receipt,** a significantly harsher offense.

3. Petitioner retained attorney Ryan Friedman to represent him in the state case in September 2017. After the case was transferred to federal jurisdiction, Friedman involved attorney Alan

Donato, who became lead counsel. Friedman continued assisting and communicating with Petitioner's family.

4. Email communication (2017-2019) show the 4-5 year state offer *(Ex. C-1)*, forensics-disc delays and DA hostility (Ex. C-2, C-3), the post-letter shift in USAO posture and description of a hidden Dolphin browser (Ex. C-4), counsel's discouragement of appeal (Ex. C-5, C-6), and restitution-related emails (Ex. C-7).

5. On February 11, 2019, Petitioner pled guilty to one count of Receipt of Child Pornography under 18 U.S.C. § 2252(a)(2), believing that the plea would result in a **15-year sentence.** On June 10, 2019, the Court imposed 292 months of imprisonment and lifetime supervision.

6. Petitioner was **24 years old** at the time of sentencing. He did not appeal, relying on counsel's assurances that an appeal would "look bad" to the court and that "there is no need to do an appeal—it won't do anything."

7. Petitioner later filed a § 2255 motion, which was denied. The Ninth Circuit denied authorization for a successive motion on **September 19, 2025** (Ex. H), leaving § 2241 as the only available remedy.

## IV. STATEMENT OF FACTS

### A. Parole and Arrest Sequence

Petitioner was arrested by Roseville Police on February 11, 2017, for an alleged parole violation after being seen at a mall with a minor. He was booked in Auburn Jail but later released after the parole officer confirmed no violation. His ZTE phone was confiscated and never returned. On April 4, 2017, his parole conditions were modified from "no contact with minors under 13" to "no contact with minors under 18.". The following day, on April 5, 2017, Petitioner was arrested

in the parking lot, at which time his **BLU mobile phone was seized from his person**. While Petitioner was being arrested outside, other officers conducted a search of his room, during which a Roku device and Wii console were seized, without his knowledge and were never returned. The officer who provided the property receipt did so only after being specifically asked by the mother and appeared surprised by the request (Ex. D)

## B. Improper Transfer and Prosecution Escalation

After Petitioner declined the 4-5 state plea deal, the DA transferred the case to federal authorities. The charge was reclassified from possession to receipt of child pornography—an offense carrying nearly double the minimum penalty. Emails between counsel and Petitioner's mother confirm the DA's threat to "send the case to the feds" if the plea was not accepted (Ex. C-1).

## C. Counsel's Ineffective Advice

Emails show counsel repeatedly discouraged appeal by saying Petitioner should not appeal because "it will look bad to the jury since there are children involved." Counsel also failed to explain what an appeal was or its potential impact. Petitioner, unfamiliar with federal law and young at the time, relied on this advice. Counsel further failed to correct the false portrayal of Petitioner's prior misdemeanor conviction under California Penal Code § 243.4(a) (sexual battery) as "rape."

Exhibit C includes:
- C-1 through C-7 (see Exhibit Index).

These communications support Grounds I, II, and VII.

### D. Forensic Ambiguities

The conviction relied on a forensic report claiming 461 images of child pornography on Petitioner's phone. These files lacked timestamps or metadata linking them to knowing possession or distribution. The PSR acknowledged that the files were downloaded via peer-to-peer software—uTorrent, FrostWire, and SHAREit—but stated, **"there is no evidence that he knowingly distributed any images."** (Ex. C-4). Investigators also noted the presence of the Dolphin browser and Clean Master app, but no evidence established Petitioner used them intentionally for concealment.

Notably, the original device associated with the alleged conduct—a ZTE mobile phone seized during a February 11, 2017 arrest by Roseville Police— was later discovered to have been transferred from Roseville PD to Citrus Heights PD without documentation or receipt confirmation, as far as the family could determine, and no formal record of transfer was ever produced. At the time of the attempted retrieval, Roseville Police reported having no record of the arrest or property in their system. This undocumented and unverified transfer of seized evidence creates a material break in the chain of custody and raises substantial doubt as to the authenticity and integrity of the digital evidence subsequently attributed to Petitioner. (Ex. D.)

### E. Sentencing Mischaracterizations

The prosecution falsely described Petitioner's prior § 243.4(a) conviction as "rape," leading the Court to describe him as a "sexually deviant child predator." This false narrative, unsupported by the record, inflated his sentencing exposure and influenced the judge's reasoning (Ex. A).

## V. GROUNDS FOR RELIEF

### Ground I – Ineffective Assistance of Counsel

Counsel failed to advise Petitioner of appellate rights, discouraged appeal by falsely stating it would "look bad," allowed the prosecution's misstatements about prior convictions to stand, and failed to challenge the escalation of my state "possession" charge to federal "receipt" without new evidence.

These errors fall below the standard of reasonable competence under *Strickland v. Washington*, 466 U.S. 668 (1984) and but for counsel's errors, Petitioner would not have pleaded guilty or would have pursued appeal. (See Ex. C-5, C-6 - counsel discouraging appeal; framing 292 months as unavoidable "lowest" guideline; no meaningful explanation of appeal).

Prejudice is established because, but for counsel's deficient advice, Petitioner would have either rejected the plea or filed a timely appeal.

### Ground II – Prosecutorial Misconduct and Misrepresentation

The prosecution mischaracterized Petitioner's prior California Penal Code § 243.4(a) conviction as "rape." The government's portrayal of Petitioner as a "child rapist" and "predator" was false and legally improper. This false claim was repeated in the sentencing memorandum and adopted by the court, violating due process under *Townsend v. Burke*, 334 U.S. 736 (1948), and *Napue v. Illinois*, 360 U.S. 264 (1959). The Court's adoption of that language shows reliance on false information at sentencing. See Ex. C-4 (counsel's description of USAO posture shift tied to the letter); aligns with Petition's argument that rhetoric—not record—drove sentencing.

Furthermore, the prosecution presented forensic conclusions based on devices whose chain of custody was never properly verified or disclosed, as detailed in Exhibit D. The government's

failure to ensure reliable evidentiary handling before relying on such material at sentencing constitutes prosecutorial overreach and misrepresentation of fact (See Ex. C-4; Ex. D).

### Ground III – Sentencing Error / Improper Enhancements

The court applied the "receipt" enhancement mechanically under U.S.S.G. § 2G2.2 without evidence of knowing distribution. The resulting 292-month sentence was disproportionate, contrary to *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), which criticized identical overuse of enhancements in non-production cases. **No evidence showed Petitioner knowingly distributed files.** See also United States v. Henderson, 649 F.3d 955 (9th Cir. 2011).

### Ground IV – Due Process Violation: Forensic Uncertainty

The files allegedly "received" lacked metadata or timestamps. The PSR acknowledged "no evidence of knowing distribution." The Dolphin browser and Clean Master app were auto-installed, not intentionally used to conceal images. Failure to disclose or return seized devices violated *Brady v. Maryland*, 373 U.S. 83 (1963). Ex. B (Dolphin hidden browser, auto-download characterization); supports lack of proof of **knowing** receipt/distribution. Ex. D (Parole Events, Property Seizure, and Evidence Handling 2017), documenting the inter-agency transfer of the seized ZTE phone and missing property records.

### Ground V – Improper Reliance on Victim Statements

The PSR referenced numerous unrelated victims (45) and exaggerated harm. The court-imposed restitution to a single victim ($1,000) but discussed dozens of unrelated victims, violating proportionality and the individualized sentencing requirement under *Pepper v. United States*, 562 U.S. 476 (2011), yet the sentencing memorandum cited losses up to $150,000. This conflation violated due process and inflated the perceived severity of my offense. (See Ex. B)

## Ground VI – Youth and Diminished Capacity

At the time of my offense, I was 24 years old. My criminal behavior began at 19, and I did not have the opportunity to mature or reintegrate before being re-arrested while on parole. Research on neurological development, recognized in *Miller v. Alabama*, 567 U.S. 460 (2012), *Graham v. Florida*, 560 U.S. 48 (2010), and *Roper v. Simmons*, 543 U.S. 551 (2005), shows the human brain continues developing into the mid-20s. Courts have acknowledged that youthful offenders possess diminished culpability and greater prospects for reform. My immaturity and lack of adult judgment undermined informed consent to the plea. My reliance on counsel's guidance limited my understanding of the plea's long-term consequences. See United States v. Briones, 929 F.3d 1057 (9th Cir. 2019) (en banc).

## Ground VII – Improper Handling of Apology Letter

In April 2019, after signing the plea, I wrote a letter to the family of the minor I had met at the mall. My counsel, Ryan Friedman, later informed my mother via email that the letter had been forwarded to the U.S. Attorney's Office and was being used to portray me as unremorseful. Instead of clarifying the letter's purpose—to express apology and misunderstanding—my counsel avoided addressing it, stating he did not want to "make things worse." The letter was used against me at sentencing to deny a downward variance. (See Ex. G)

## Ground VIII – Post-Sentencing Rehabilitation

After release from state custody in 2015, I completed my high school diploma (in the summer of 2016) and enrolled at American River College for a Business degree in the fall. While on parole, I attended weekly mandated sex-offender treatment sessions without absence and was active in

my church's Celebrate Recovery program, co-leading a young adult Bible study for ages 19–24 and assisting in worship.

Since incarceration, I have demonstrated genuine rehabilitation:

- Earned an Associate Degree in Crusade Evangelism Ministry (GPA 4.0)

- Near completion of a B.A. in Evangelism

- Completed CBT, Drug Abuse Education, Basic Cognitive Skills, Anger Management, and Emotional Regulation

- Served as Step Down Program Ally and Unit Orderly at FCI Sheridan

- Thought ACE courses and participates in ministry and mentoring programs (Ex. I).

Petitioner has completed all academic coursework requirements for a Bachelor's Degree in Crusade Evangelism Ministry; issuance of the diploma is administratively pending due solely to an outstanding financial balance, not academic deficiency. (See Ex. I.)

Under *Pepper v. United States*, 562 U.S. 476 (2011), courts may consider extraordinary rehabilitation as grounds for sentence reduction. Such transformation aligns with the purposes of sentencing under 18 U.S.C. § 3553(a)(2)(D)

## VI. LEGAL ARGUMENTS

Under § 2241, this Court may review claims of constitutional error where § 2255 is inadequate or ineffective. The "savings clause" applies where a petitioner had no unobstructed procedural opportunity to present his claims. *Alaimalo v. United States*, 645 F.3d 1042 (9th Cir. 2011);

*Harrison v. Ollison*, 519 F.3d 952 (9th Cir. 2008). Ineffective assistance claims of this scope satisfy the "miscarriage of justice" standard. *Bousley v. United States*, 523 U.S. 614 (1998).

The misrepresentation of prior convictions and failure to address evidentiary inaccuracies violated due process. Sentencing courts must rely on accurate information. *Townsend v. Burke*, 334 U.S. 736 (1948); *United States v. Tucker*, 404 U.S. 443 (1972). Furthermore, youthful characteristics mitigate culpability under *Miller* and its progeny.

## MEMORANDUM OF LAW

### Relief Under the Savings Clause of § 2255€

Because Petitioner's claims could not have been raised under § 2255 and the Ninth Circuit denied leave for a successive motion, § 2241 remains the only adequate vehicle for relief.

### 1. Ineffective Assistance of Counsel — Sixth Amendment Standard

Under *Strickland v. Washington*, 466 U.S. 668 (1984), relief is warranted when counsel's representation falls below an objective standard of reasonableness and prejudices the outcome. Counsel's failure to advise Petitioner of appellate rights, discourage appeal with false statements, and omit objections to false representations at sentencing violated both prongs of *Strickland*.

### 2. Due Process Violations and Misrepresentation of Facts

The prosecution's and court's reliance on false factual assertions about Petitioner's prior offense violated the fundamental fairness guaranteed by the Due Process Clause. See *Townsend v. Burke*, 334 U.S. 736 (1948) (sentence based on misinformation of constitutional magnitude violates due process); *Napue v. Illinois*, 360 U.S. 264 (1959) (State may not knowingly use false evidence).

### 3. Sentencing Error and Guideline Misapplication

The mechanical application of U.S.S.G. § 2G2.2 enhancements without factual basis contravenes *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), which recognized that the child-pornography guidelines often produce irrationally severe results. The court's reliance on "receipt" factors without proof of distribution rendered the 292-month term disproportionate.

### 4. Forensic Deficiencies and Withheld Evidence

The government's failure to provide or return seized devices and reliance on unverified digital data violated *Brady v. Maryland*, 373 U.S. 83 (1963), Kyles v. Whitley, 514 U.S. 419 (1995), and Arizona v. Youngblood, 488 U.S. 51 (1988), all mandating disclosure of exculpatory or impeaching evidence.

### 5. Youth, Diminished Capacity, and Sentencing Discretion

The Supreme Court in *Roper v. Simmons*, 543 U.S. 551 (2005), and *Miller v. Alabama*, 567 U.S. 460 (2012), emphasized that youthful offenders have diminished culpability and greater potential for reform. Petitioner's first offense at age 19 and immaturity at the time of the federal plea should have mitigated sentencing severity. *United States v. Briones*, 929 F.3d 1057 (9th Cir. 2019) (en banc) (recognizing youth-based mitigation for offenders under 25).

### 6. Post-Sentencing Rehabilitation

Courts may consider extraordinary rehabilitation when revisiting sentences. *Pepper v. United States*, 562 U.S. 476 (2011). Petitioner's documented record of education, ministry leadership, and mental-health assistance demonstrate genuine transformation and support relief under 18 U.S.C. § 3553(a).

For all these reasons. Petitioner's detention and sentence constitute a miscarriage of justice warranting relief under § 2241.

## VII. RELIEF REQUESTED

Petitioner respectfully requests that this Court:

1. Grant this § 2241 Petition;

2. Vacate the judgment or reduce the sentence to reflect a fair and proportionate term consistent with due process;

3. Order re-sentencing before a different judge with full evidentiary review of the chain of custody and forensic findings; or

4. Grant any other relief deemed just and proper.

## VIII. APPENDIX A – EXHIBIT INDEX

**Exhibit A** – Judgment and Commitment Order; Sentencing Minutes; Restitution Order
Establishes the sentence of 292 months' imprisonment and lifetime supervision.
Cited in Procedural History ¶5 and Ground III (Sentencing Error).

**Exhibit B** – Presentence Investigation Report (Redacted Excerpts)
Demonstrates absence of knowing distribution, exaggerated victim impact, and guideline overstatement.
Supports Ground IV (Forensic Uncertainty) and Ground V (Victim Impact).

**Exhibit C** – Counsel Email Communications (2017–2019)
Emails between Monica Mois and defense counsel (Mark Slaughter. Ryan Friedman, Alan Donato) reflecting plea negotiations. federal referral threat, forensic descriptions, discouragement of appeal, and sentencing posture.
Supports Procedural History ¶4; Grounds I. II. and IV.

**Exhibit D** – Parole Events. Property Seizure, and Evidence Handling (2017)
Documents arrest timeline, seizure of devices, property receipt irregularities, and chain-of-custody gaps, including the ZTE phone transfer and BLU phone seizure at arrest location.
Supports Statement of Facts §IV(A), §IV(D); Grounds II and IV.

**Exhibit E** – State Plea Offer Evidence (June 2017)
Email from Public Defender Mark Slaughter confirming a 4–5 year state plea offer prior to federal referral.
Supports Procedural History ¶2 and Ground I.

**Exhibit F** – Ineffective Assistance & Appeal Discouragement Emails
Emails from Ryan Friedman and Alan Donato discouraging appeal and minimizing appellate options.
Supports Ground I (Ineffective Assistance of Counsel).

**Exhibit G** – Counsel Email Regarding Apology Letter (April 2019)
Email from Ryan Friedman acknowledging the letter's use by the government and counsel's refusal to clarify context.
Supports Ground VII (Improper Handling of Apology Letter).

**Exhibit H** – Ninth Circuit Order Denying Authorization for Successive § 2255 Motion (Sept. 19, 2025)
Establishes § 2255 inadequacy and necessity of § 2241 review.
Supports Jurisdiction and Savings Clause analysis.

**Exhibit I** – Educational and Rehabilitative Records
Certificates, transcripts, and program completions demonstrating sustained rehabilitation.
Supports Ground VIII (Post-Sentencing Rehabilitation).

**Exhibit J** – Character Reference Letters (Pre-Arrest, 2017)
Letters from community members predating arrest attesting to character, rehabilitation potential, and maturity.
Supports Ground VI (Youth & Diminished Capacity) and Ground VIII.

*(Page numbers to be completed upon assembly of exhibits before filing.)*

**VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Executed on ___*March 12*___. 2026.

Respectfully submitted.

**Emanuel Mois, Pro Se**

Reg. No. 77348-097

FCI Sheridan

P.O. Box 5000

Sheridan, OR 97378

## IX. CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241** was placed in the institutional mailing system at FCI Sheridan, addressed to the Clerk of the United States District Court for the District of Oregon, Portland Division.

Executed this _12_ day of ___March___ 2026.

**Respectfully submitted,**

Emanuel Mois, Pro Se

Reg. No. 77348-097

FCI Sheridan

Sheridan, OR 97378

**EXHIBIT A**

Judgment and Commitment Order

(June 10, 2019 & June 18, 2019)

This exhibit consists of the official Judgment and Commitment Order entered by the

United States District Court for the Eastern District of California in United States v.

Emanuel Mois, Case No. 2:17-cr-00184-KJM.

The Judgment establishes that Petitioner was sentenced to a term of 292 months

(24 years, 4 months) of imprisonment, followed by lifetime supervised release.

This exhibit is cited in:

• Procedural History, Section III

• Statement of Facts, Section IV(E)

• Ground III – Sentencing Error and Improper Enhancements

The Judgment is submitted in its original, unredacted form as it appears on the

court docket.

Total pages in Exhibit A: 8 pages

AO 245B-CAED (Rev. 02/2018) Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## Eastern District of California

UNITED STATES OF AMERICA

v.

**EMANUEL MOIS**

**JUDGMENT IN A CRIMINAL CASE**

Case Number: **2:18CR00065-1**

Defendant's Attorney: Alan J. Donato, Retained

**THE DEFENDANT:**

[×] pleaded guilty to Count __1__ of the Indictment.

[ ] pleaded nolo contendere to count(s) ____ , which was accepted by the court.

[ ] was found guilty on count(s) ____ after a plea of not guilty.

The defendant is adjudicated guilty of these offense:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2252(a)(2) | RECEIPT OF CHILD PORNOGRAPHY **(CLASS B FELONY)** | 2/11/2017 | 1 |

The defendant is sentenced as provided in pages 2 through __9__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ] The defendant has been found not guilty on count(s) ____ .

[ ] Count(s) ____ dismissed on the motion of the United States.

[ ] Indictment is to be dismissed by District Court on motion of the United States.

[×] Appeal rights given.          [×] Appeal rights waived.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution or fine, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**6/10/2019**

Date of Imposition of Judgment

*[signature]*

Signature of Judicial Officer

**Kimberly J. Mueller**, United States District Judge

Name & Title of Judicial Officer

6/18/2019

Date

AO 245B-CAED (Rev. 02/2018) Sheet 2 - Imprisonment

DEFENDANT: **EMANUEL MOIS**                                                                Page 2 of 9
CASE NUMBER: **2:18CR00065-1**

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: 292 months.

[ ]  No TSR: Defendant shall cooperate in the collection of DNA.

[✓]  The court makes the following recommendations to the Bureau of Prisons:
     The court recommends that the defendant be incarcerated as close as possible to Sacramento, California to facilitate family visitation; insofar, as this accords with security classification and space availability.

[✓]  The defendant is remanded to the custody of the United States Marshal.

[ ]  The defendant shall surrender to the United States Marshal for this district

      [ ]      at ____ on ____.
      [ ]      as notified by the United States Marshal.

[ ]  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

      [ ]      before ____ on ____.
      [ ]      as notified by the United States Marshal.
      [ ]      as notified by the Probation or Pretrial Services Officer.

     If no such institution has been designated, to the United States Marshal for this district.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____
at _____, with a certified copy of this judgment.


                                              _____
                                              United States Marshal


                                              _____
                                              By Deputy United States Marshal

Case 2:18-cr-00065-KJM    Document 36    Filed 06/18/19    Page 3 of 8

AO 245B-CAED (Rev. 02/2018) Sheet 3 - Supervised Release

DEFENDANT: **EMANUEL MOIS**                                                    Page 3 of 9
CASE NUMBER: **2:18CR00065-1**

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :
Life.

## MANDATORY CONDITIONS

You must not commit another federal, state or local crime.

You must not unlawfully possess a controlled substance.

You must refrain from any unlawful use of controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two (2) periodic drug tests thereafter, not to exceed four (4) drug tests per month.

[ ] The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse.

[ ] You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution.

[✓] You must cooperate in the collection of DNA as directed by the probation officer.

[✓] You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense.

[ ] You must participate in an approved program for domestic violence.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B-CAED (Rev. 02/2018) Sheet 3 - Supervised Release

DEFENDANT: **EMANUEL MOIS**                                                          Page 4 of 9
CASE NUMBER: **2:18CR00065-1**

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.    You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2.    After initially reporting to the probation office, you will receive instructions from the Court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3.    You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the Court or the probation officer.

4.    You must answer truthfully the questions asked by the probation officer.

5.    You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.    You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any item prohibited by the conditions of your supervision that he or she observes in plain view.

7.    You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment, you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8.    You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9.    If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10.   You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers).

11.   You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the Court.

12.   If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13.   You must follow the instructions of the probation officer related to the conditions of supervision.

### U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____ Date _____

AO 245B-CAED (Rev. 02/2018) Sheet 3 - Supervised Release

DEFENDANT: **EMANUEL MOIS**                                                        Page 5 of 9
CASE NUMBER: **2:18CR00065-1**

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall submit to the search of his person, property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects at any time, with or without a warrant, by any law enforcement or probation officer, in the lawful discharge of the officer's supervision functions with reasonable suspicion concerning unlawful conduct or a violation of a condition of probation or supervised release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

2. The defendant shall not possess or use a computer or any device that has access to any "on-line computer service" unless approved by the probation officer. This includes any Internet service provider, bulletin board system, or any other public or private computer network.

3. The defendant shall have no contact with known children under the age of 18, unless approved by the probation officer in advance. The defendant is not to loiter within 100 feet of school yards, parks, playgrounds, arcades, or other places primarily used by children under the age of 18. This shall include that the defendant is not to engage in any occupation, either paid or volunteer, that causes him to regularly contact known persons under the age of 18.

4. The defendant shall consent to the probation officer and/or probation service representative conducting periodic unannounced examinations of (a) any computer, or (b) computer-related device, or (c) equipment that has an internal or external modem which is in the possession or control of the defendant. The defendant consents to retrieval and copying of all data from any such computer, computer-related device, or equipment as well as any internal or external peripherals to ensure compliance with conditions. The defendant consents to removal of such computer, computer-related device, and equipment for purposes of conducting a more thorough inspection and analysis.

   The defendant consents to having installed on any computer, computer-related device, and equipment, at the defendant's expense, any hardware or software systems to monitor the use of such computer, computer-related device, and equipment at the direction of the probation officer, and agrees not to tamper with such hardware or software and not install or use any software programs designated to hide, alter, or delete his computer activities. The defendant consents to not installing new hardware without the prior approval of the probation officer.

5. The defendant shall not possess, own, use, view, or read any material depicting and/or describing sexually explicit conduct involving children, including computer images, pictures, photographs, books, writings, drawings, videos, or video games. "Sexually explicit conduct" as defined in 18 U.S.C. § 2256(2) means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

   In addition, the defendant shall not possess, own, use, view, or read any material depicting and/or describing sexually explicit conduct involving adults, defined as sexually stimulating depictions of adult sexual conduct that are deemed inappropriate by the defendant's probation officer, including computer images, pictures, photographs, books, writings, drawings, videos, or video games depicting such conduct. Furthermore, the defendant shall not frequent any place whose primary purpose is to sell, rent, show, display, or give other forms of access to, material depicting and/or describing sexually explicit conduct.

6. The defendant shall consent to third-party disclosure to any employer or potential employer, concerning any computer-related restrictions that are imposed upon him. This includes any activities in which you are acting as a technician, advisor, or consultant with or without any monetary gain or other compensation.

7. The defendant shall provide all requested business/personal phone records to the probation officer. The defendant shall disclose to the probation officer any existing contracts with telephone line/cable service providers. The defendant shall provide the probation officer with written authorization to request a record of all outgoing or incoming phone calls from any service provider.

8. The defendant shall attend, cooperate with, and actively participate in a sex offender treatment and therapy program [which may include, but is not limited to, risk assessment, polygraph examination, and/or Visual Reaction Treatment] as approved and directed by the probation officer and as recommended by the assigned treatment provider.

9. As directed by the probation officer, the defendant shall participate in a co-payment plan for treatment or testing and shall make payment directly to the vendor under contract with the United States Probation Office of up to $25 per month.

10. The defendant's residence shall be pre-approved by the probation officer. The defendant shall not reside in direct view of places such as school yards, parks, public swimming pools, or recreational centers, playgrounds, youth centers, video arcade facilities, or other places primarily used by children under the age of 18.

11. The defendant shall not dispose of or otherwise dissipate any of his assets until the fine and/or restitution ordered by this Judgment is paid in full, unless the defendant obtains approval of the Court or the probation officer.

AO 245B-CAED (Rev. 02/2018) Sheet 3 - Supervised Release

DEFENDANT: **EMANUEL MOIS**                                                                  Page 6 of 9
CASE NUMBER: **2:18CR00065-1**

12.    The defendant shall apply all monies received from income tax refunds, lottery winnings, inheritance, judgments and any anticipated or unexpected financial gains to any unpaid restitution ordered by this Judgment.

13.    The defendant shall provide the probation officer with access to any requested financial information.

14.    The defendant shall not open additional lines of credit without the approval of the probation officer.

AO 245B-CAED (Rev. 02/2018) Sheet 5 - Criminal Monetary Penalties

DEFENDANT: **EMANUEL MOIS**
CASE NUMBER: **2:18CR00065-1**

Page 7 of 9

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the Schedule of Payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $100.00 S/A + $5,000 JVTA* | $0.00 | $TBD |

[•] The determination of restitution is deferred until ___8/19/2019___ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

[ ] The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

[ ] Restitution amount ordered pursuant to plea agreement $ ___

[ ] The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

[ ] The court determined that the defendant does not have the ability to pay interest and it is ordered that:

　　[ ]　The interest requirement is waived for the　　[ ] fine　　[ ] restitution

　　[ ]　The interest requirement for the　　[ ] fine　　[ ] restitution is modified as follows:

[ ] If incarcerated, payment of the fine is due during imprisonment at the rate of not less than $25 per quarter and payment shall be through the Bureau of Prisons Inmate Financial Responsibility Program.

[ ] If incarcerated, payment of the restitution is due during imprisonment at the rate of not less than $25 per quarter and payment shall be through the Bureau of Prisons Inmate Financial Responsibility Program.

*Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Case 2:18-cr-00065-KJM    Document 36    Filed 06/18/19    Page 8 of 8

AO 245B-CAED (Rev. 02/2018) Sheet 6 - Schedule of Payments

DEFENDANT: **EMANUEL MOIS**                                                           Page 8 of 9
CASE NUMBER: **2:18CR00065-1**

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A.    [ ]    Lump sum payment of $ ___ due immediately, balance due

        [ ]    Not later than ___, or

        [ ]    in accordance    [ ]C,    [ ]D,    [ ]E,or    [ ]F below; or

B.    [•]    Payment to begin immediately (may be combined with    [ ]C,    [ ]D,    or[ ]F below); or

C.    [ ]    Payment in equal ___ (e.g. weekly, monthly, quarterly) installments of $ ___ over a period of ___ (e.g. months or years), to commence ___ (e.g. 30 or 60 days) after the date of this judgment; or

D.    [ ]    Payment in equal ___ (e.g. weekly, monthly, quarterly) installments of $ ___ over a period of ___ (e.g. months or years), to commence ___ (e.g. 30 or 60 days) after release from imprisonment to a term of supervision; or

E.    [ ]    Payment during the term of supervised release/probation will commence within ___ (e.g. 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendants ability to pay at that time; or

F.    [ ]    Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

[ ]    Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate:

[ ]    The defendant shall pay the cost of prosecution.

[ ]    The defendant shall pay the following court cost(s):

[•]    The defendant shall forfeit the defendant's interest in the following property to the United States:
ZTE cellular telephone Model Z980L as provided by the Preliminary Order of Forfeiture filed on 4/5/2019 (ECF No. 29), made final and incorporated into this Judgment.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

**EXHIBIT B**

**Presentence Investigation Report (Excerpted Pages)**

This exhibit contains **limited, relevant excerpts** from the Presentence Investigation Report prepared in United States v. Mois, Case No. 2:17-cr-00184-KJM (E.D. Cal.).

The attached pages are submitted **solely** to demonstrate:

1.  The absence of evidence establishing knowing distribution of child pornography;

2.  The reliance on peer-to-peer software without proof of intent;

3.  The use of generalized victim impact language inconsistent with individualized restitution; and

4.  The mechanical application of U.S.S.G. § 2G2.2 enhancements challenged in this Petition.

All other portions of the PSR have been **redacted or omitted** as irrelevant to the claims raised, in accordance with federal habeas practice.

(Page count: 5 pages)

*Note: Exhibit B contains limited excerpts of the Presentence Investigation Report. Irrelevant, sensitive, or prejudicial material has been redacted for proportionality and relevance.*

Case 2:18-cr-00065-KJM    Document 27    Filed 04/01/19    Page 3 of 26

**SUMMARY OF RECOMMENDED FINDINGS IN PRESENTENCE REPORT WORKSHEET**

**Defendant: EMANUEL M██████**                    **DKT. NO. 0972 2:18CR00065-1**

☒ A recommendation for incarceration at the high end of the guideline imprisonment range is warranted based on the defendant's sexually deviant predatory behavior and flagrant disregard for the conditions of probation and/or parole.

3



8.

9.   ████ used peer-to-peer software, including but not limited to uTorrent, FrostWire, and SHAREit, to download the child pornography files, but there is no evidence that he knowingly distributed any images.

10.

11.

12.

13.

14.

15.

16.

Exhibit B pg. 2/5

17. ███████████████████████████████████████████████████
████████████████████████████████████████████████ ██
████████████████████████████ ████████████████████
████████████████████████████ ████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████ ████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████

18. According to a letter addressed to the family of T███ Doe and postmarked March 5, 2019, M███ extended his apologies for putting T███ Doe's family through stress and for not being completely honest with them. He reminisced about and thanked them for the fun and great memories they shared together, especially a trip to San Francisco, California. He stated he wanted to clarify his case for them and explained that there were no visible images of anything inappropriate found on his phone. Instead, law enforcement found approximately 400 "inappropriate" files in a web browser application, which was unknown to him, that automatically downloaded images from the internet. He explained that even though the images were hidden and unknown to him, he is facing 15 years imprisonment for "receiving" them. ████████████████████████████ ████████████████████████████████████████

## Victim Impact

19. The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense. According to the case agent, the National Center for Missing and Exploited Children identified at least five known victims through the Child Victim Identification Program (CVIP). However, according to the plea agreement, approximately 45 victims have been identified in this case, and the victims' losses could range from approximately $1,000 to $150,000 each. Eight victim impact statements have been received from victims in five different child pornography series, which will be filed with the report. In the statements, the victims explain how they are continually violated and exploited every time images of their victimization are viewed and/or shared on the internet. One victim (Tara series) requested restitution in the amount of $18,136.40.

## Adjustment for Obstruction of Justice

20. ████████████████████████████████████████████████
████████

## Adjustment for Acceptance of Responsibility

21. ████████████████████████████████████████████████
████████████████████████████████████████████████
████████ ████████████████████████████ ████████████
████████████████████████████████████████████████

6

22.

**Offense Level Computation**

23.

**Count 1**:  **Receipt of Child Pornography**

24.    **Base Offense Level:** The guideline for 18 U.S.C. § 2252(a)(2) offenses is USSG §2G2.2.    This section provides that an offense involving receipt of child pornography has a base offense level of 22.  USSG §2G2.2(a)(2).                              **22**

25.    **Specific Offense Characteristics:**    The offense involved material with prepubescent minors who had not attained the age of 12 (e.g., file 1354.jpg).  Accordingly, a two-level increase is warranted.  USSG §2G2.2(b)(2).          **+2**

26.    This offense involved material that portrayed sadistic or masochistic conduct of a minor (e.g. file 872.jpg).    Accordingly, a four-level increase is warranted.  USSG §2G2.2(b)(4)(A).                                                      **+4**

27.    The defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor as evidenced by his prior convictions for Sexual Battery, Docket Number 13F02667, and Send/Sell Obscene Matter: Minor, Docket Number 14F05888.    Accordingly, a five-level increase is warranted. USSG §2G2.2(b)(5).                                                        **+5**

28.    The offense involved the use of a computer or an interactive computer service for the possession, transmission, or receipt of the material.  Accordingly, a two-level increase is warranted.  USSG §2G2.2(b)(6).                          **+2**

29.    The offense involved 491 images of child pornography.  Accordingly, a four-level increase is warranted.  USSG §2G2.2(b)(7)(C).                          **+4**

30.    **Victim Related Adjustment:** None.                                        **0**

31.    **Adjustment for Role in the Offense:** None.                          **0**

32.    **Adjustment for Obstruction of Justice:** None.                      **0**

33.    **Adjusted Offense Level (Subtotal):**                                    **39**

34.    **Chapter Four Enhancement:** None.                                      **0**

Exhibit B pg. 4/5



35. **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense as evidenced by his guilty plea and acknowledgement of wrongdoing. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a).    **0**

36. The defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b).    **-1**

37. **Total Offense Level:**    **36**

**Offense Behavior Not Part of Relevant Conduct**

38. None.

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

39. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

40. ▆▆▆▆▆▆▆▆

41. ▆▆▆▆▆▆▆▆▆▆▆▆▆

**Juvenile Adjudication(s)**

42. None.

**Adult Criminal Conviction(s)**



43. 



Exhibit B pg.

# EXHIBIT C — COUNSEL COMMUNICATIONS (2017–2019)

## Purpose

These communications show:
(1) the case's state-court posture and lower exposure prior to federal referral;
(2) counsel's discouragement of appeal and failure to adequately explain appellate rights;
(3) counsel's description of the "letter" incident and the government's shift in sentencing posture; and
(4) counsel's own characterization of the device evidence (hidden "Dolphin" browser, auto-downloaded files).

## Provenance

True and correct copies of emails sent to/from **Monica Mois** (Petitioner's mother), kept in the ordinary course of family records while Petitioner was in custody.
Authentication appears in the accompanying **Declaration of Monica Mois** under **28 U.S.C. § 1746**.

## EXHIBIT C — INDEX OF COUNSEL COMMUNICATIONS

| Sub-Exhibit | Description |
| --- | --- |
| C-1 | Email from Public Defender Mark Slaughter to Monica Mois dated June 16, 2017, documenting a tentative state plea offer of 4–5 years and a continued settlement conference. |
| C-2 | Email from Ryan Friedman dated September 18, 2017, describing the State District Attorney's "hard-line" position and pending forensic discovery under protective order. |
| C-3 | Email from Ryan Friedman dated October 23, 2017, stating the case remained unresolved due to the District Attorney's position and advising to "wait things out." |
| C-4 | Email from Ryan Friedman dated April 2, 2019, referencing the apology letter incident, the government's shift in posture, and the presence of approximately 400 files in a hidden "Dolphin" browser application that automatically downloaded content. |
| C-5 | Email from Ryan Friedman dated June 10, 2019, discouraging appeal and asserting that 292 months was the lowest possible guideline sentence. |
| C-6 | Email from Ryan Friedman dated June 12, 2019, reiterating advice against appeal and stating the U.S. Attorney's Office would not support a downward variance to 15 years. |
| C-7 | Email correspondence between Ryan Friedman and Alan Donato dated August 6–9, 2019, concerning restitution logistics and post-sentencing communications. |

# DECLARATION OF MONICA MOIS

I, **MONICA MOIS**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the mother of Petitioner **Emanuel Mois**. I submit this declaration to authenticate the attached email communications marked **Exhibit C (C-1 through C-7).**
2. From 2017 through 2019, while Emanuel was in custody, I routinely communicated by email with his attorneys **Ryan Friedman, Alan J. Donato, paralegal Samuel Karapetyan,** and his **state public defender Mark Slaughter** regarding Emanuel's case.
3. I sent and received the emails attached as Exhibit C using my email account **voica22@yahoo.com**. The attorneys and paralegal used the email addresses reflected on the face of the messages.
4. I saved and maintained these emails in the ordinary course of our family records. The attached copies are true and correct copies of the emails I sent and/or received, with personal contact information and sensitive identifiers redacted.
5. The emails fairly and accurately reflect contemporaneous communications regarding:
    - the state-court plea posture and continuances;
    - counsel's discussion of forensics and the "letter" incident;
    - counsel's discouragement of appeal; and
    - restitution logistics.
6. I am available to testify to the contents of this declaration if requested.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ⟨illegible⟩ **, 2026,** at ⟨illegible⟩

---

**MONICA MOIS**
Email: voica22@yahoo.com

# DECLARATION OF EMANUEL MOIS

I, **EMANUEL MOIS**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. While in pretrial custody, I authorized my mother, **MONICA MOIS**, to communicate with my attorneys on my behalf by email and to relay information to me.
2. The emails attached as **Exhibit C** reflect communications my mother contemporaneously shared with me or that counsel discussed with me during visits or calls, including the state plea posture, forensics issues (hidden "Dolphin" browser and auto-downloads), the "letter" incident, sentencing posture, discouragement of appeal, and restitution matters.
3. I relied on counsel's statements reflected in those emails in deciding not to file a direct appeal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _March 12_, **2026**, at _FCI Sheridan_.

**EMANUEL MOIS, Pro Se**
Reg. No. _77348097_

FCI Sheridan

# SUB-EXHIBIT C-1

## Counsel Communications – State Plea Offer (June 2017)

**Description:**
Email from Public Defender **Mark Slaughter**, dated June 16, 2017 and June 26, 2017, documenting the State District Attorney's tentative plea offer of **4–5 years of state prison** prior to federal referral. This communication establishes the original state-court posture of the case and supports the procedural history regarding plea negotiations.

**Relevance:**
Supports claims of prosecutorial escalation and ineffective assistance of counsel by demonstrating materially lower sentencing exposure before federal involvement.

Exhibit C-1　p.1/2

## RE: Updates

From. Slaughter. Mark (slaughterm@saccounty.net)

To    voica22@yahoo.com

Date.  Friday, June 16, 2017 at 01:51 PM PDT


Yes, the DA's tentative offer is 4-5 years of state prison. They have taken information from the kid's cellphone and don't believe there is anything there of interest. The case was continued to 06/29 at 8:30 for settlement conference. I will be out of town on that date and will have Alicia Hartley will represent Emanuel on that date. She will ask the court for an offer to resolve the case and try and negotiate for a promise of no state prison and county time with probation. If the case cannot be resolved then a plea of not guilty will be entered and the case will be scheduled for a Preliminary Hearing (probable cause hearing).


Mark K. Slaughter
Supervising Assistant Public Defender
700 H Street., Ste. 0270
Sacramento, CA 95814
(916) 874-6558 desk
(916) 874-8223 fax
slaughterm@saccounty.net


**From:** Monica Mois [mailto:voica22@yahoo.com]
**Sent:** Friday, June 16, 2017 1:05 PM
**To:** Slaughter. Mark
**Subject:** Updates


Mr. Slaughter,


Do you have any updates on Emanuel's case?


We would appreciateif you can give us some updates.


Thank You!


Monica and Vasile Mois


Sent from Yahoo Mail on Android

Re: Question

From: Slaughter.Mark (slaughterm@sac county.net)

To:     voica22@yahoo.com

Date: Monday, June 26, 2017 at 01:32 PM PDT


I am out of the office. It would not be very helpful at this stage to send anything to the judge because whatever is sent to the judge must be turned over to the District Attorney. That's because the judge cannot have communications with either party tot he case. If Emanuel is prepared to accept a conviction and with terms from the judge which include prison then the letters are helpful. His case has been discussed with the judge a few times and the judge has already indicated he would consider a prison commitment. The District Attorney has tentatively asked for 4-5 years of prison and the judge did not disagree. The judge is aware of Emanuel's parole conditions. Please do not send anything to the judge. I return to the office on 7/17, and until then Alicia Hartley, an attorney in my office, will handle the case.

Mark K Slaughter
Sent from my iPhone

On Jun 26, 2017, at 8:06 PM, Monica Mais <voica22@yahoo.com<mailto:voica22@yahoo.com» wrote:

Good morning Mr. Slaughter,

I want to ask you if sending a letter to the judge on Emanuel's behalf will help in his case. I was thinking to write him directly explaining his parole conditions, his character, how he went back to school, etc.

Please let me know!

Thank you!

Monica Mois

# SUB-EXHIBIT C-2

## Counsel Communications – Forensic Delay and DA Posture (September 2017)

**Description:**
Email from **Ryan Friedman**, dated September 18, 2017, noting the District Attorney's "hard-line" position and the defense's need to await forensic discovery under a protective order.

**Relevance:**
Supports ineffective assistance of counsel and due process claims by showing delays in discovery and early indications of prosecutorial rigidity.

½

## Re: Emanuel

From: Ryan Friedman (ryan@friedman-firm.com)

To: voica22@yahoo.com; sk@friedman-firm.com

Date: Monday, September 18, 2017 at 05:45 PM PDT

Hi Monica,

I'm waiting for a forensics disc on Emanuel's case. The disc is subject to a protective order, which the judge needs to sign. Emanuel and I have some questions that we're hoping I can answer based upon the data on the new disc. This will help shape our defense strategy going forward.

The DA in the case, Bruce Chang, is very difficult to work with. The offer in the case is 7 years state prison, which is essentially "upper term" and unreasonable.

The more cases someone has in their history, the more challenging it is to work a deal with the DA. Emanuel has racked up his past cases in a very short amount of time, which is concerning to the DA's office.

This one is going to take some time to resolve. I'm confident that I can get Emanuel a good result, but we're not there yet. Hopefully, once I have an opportunity to review the new disc I'll be able to move things forward in a positive direction.

- Ryan.

On Mon, Sep 18, 2017 at 5:24 PM, Monica Mois <voica22@yahoo.com> wrote:

Good morning Ryan,

I have been really busy, as everybody else, to contact you earlier about Emanuel. Thank you for taking again his case and for trying to help him through this madness. He told me that you went to visit him on Friday but we did not talk about it.
Tomorrow is his court day and I would like when you can to give me a short info about what is going on. I work 8 to 5 everyday and have classes in the evening. I am really concentrating to finish the last two classes in criminal justice so I would appreciate if you can email or even text me at 916-849-7542. Have a great day!

Monica

Sent from Yahoo Mail on Android

 Virus-free. www.avast.com

# SUB-EXHIBIT C-3

## Counsel Communications – Continued State Proceedings (October 2017)

**Description:**
Email from **Ryan Friedman**, dated October 23, 2017, indicating continuation of the case, the District Attorney's continued "hard-line" stance, and counsel's strategy to "wait things out."

**Relevance:**
Demonstrates ongoing state-level handling and counsel's strategic posture prior to federal escalation.



**Ryan Friedman**
**From:** ryan@friedman-firm.com
**To:** Monica Mois,Samuel Karapetyan
Mon, Oct 23, 2017 at 3:38 PM

Hi Monica,

The case is going to get continued out to 11/30. The DA has adopted a hard-line position, and we need to
wait things out so that their position can become more flexible. I'm very sorry, but Emanuel has made
things very difficult for himself. This case is going to take some time to sort out. I've discussed this with
him. and he understands and is willing to be patient in hopes of reaching a more favorable outcome.

- Ryan.


On Thu, Oct 19, 2017 at 3:23 PM, Monica Mois <voica22@yahoo.com> wrote:

Hi Ryan,

I just want to see if next court day will be another continuation of the case. Or maybe there are some new
developments?


Please let me know.


Thank you!


Monica



# SUB-EXHIBIT C-4

**Counsel Communications – Letter Incident and Forensic Characterization (April 2019)**

**Description:**
Email from **Ryan Friedman**, dated April 2, 2019, describing the government's shift in posture following Petitioner's apology letter and characterizing the alleged digital evidence as approximately **400 files** located in a hidden **"Dolphin" browser** application that automatically downloaded content.

**Relevance:**
Supports claims of prosecutorial misrepresentation, forensic uncertainty, and due process violations by reflecting counsel's own description of auto-downloaded files and altered government strategy.

## Update

From: Ryan Friedman (ryan@friedman-firm.com)

To: voica22@yahoo.com; alan@donato.legal; sk@friedman-firm.com

Date: Tuesday, April 2, 2019 at 07:01 PM PDT

Hello Monica,

I hope you and your family are well. We wanted to touch base and let you know that we're busy working on Emanuel's sentencing hearing.

Unfortunately, after entering the plea, Emanuel decided to write a letter to Terran's family. I don't know why he did this, as it was an incredibly foolish thing to do. When Terran's family received the letter, they immediately called the police and provided a copy of it to the US Attorney's Office. It wasn't until the US Attorney emailed us a copy of the letter that we became aware that he had written and sent it.

In the letter, Emanuel explained that there were no visible images of anything inappropriate found on his phone. Instead, law enforcement found approximately 400 "inappropriate" files in a web browser application, which was unknown to him, that automatically downloaded images from the internet. He explained that even though the images were hidden and unknown to him, he is facing 15 years imprisonment for "receiving" them. He stated he cannot fight his case because of his past and "Citrus Heights cops always had it out for him."

The strategy at sentencing has always been for Emanuel to show the court that he is sincerely remorseful about his actions, and recognizes them to be wrong. A person who recognizes their criminality at an early stage of the proceedings gets a benefit at sentencing because they are perceived as being more amenable to treatment/rehabilitation.

The letter that Emanuel authored shows that his intentions are actually not of remorse. It shows that he believes that the crime was not his fault, and that he was "set up" by the police. This is the opposite of accountability, and I'm flabbergasted that he would choose to send this letter now -- right before sentencing.

We're going to do our best to run damage control, but we wanted to you be aware of this issue. I have attached a copy of the letter to this email.

- Ryan.



# SUB-EXHIBIT C-5

## Counsel Communications – Discouragement of Appeal (June 10, 2019)

### Description:
Email from **Ryan Friedman**. dated June 10. 2019. asserting that the **292-month sentence** was the "very lowest" guideline sentence and discouraging appellate review.

### Relevance:
Directly supports ineffective assistance of counsel claims regarding failure to advise Petitioner of appellate rights.

## Re: Message from EM

From: Ryan Friedman (ryan@friedman-firm.com)

To:    voica22@yahoo.com; sk@friedman-firm.com

Cc    alan@donato.legal

Date:  Monday, June 10, 2019 at 05:05 PM PDT


Hi Monica,

While the optimist in me is certainly unhappy with the court's ruling regarding sentencing, it is important to be realistic about Emanuel's circumstances. All things considered, the judge imposed the very lowest punishment that she could while sticking to the federal sentencing guidelines. We had requested that she impose a sentence outside the guidelines, but she declined. The judge could have easily assigned a more punitive sentence, however, she did not. The probation department recommended over a decade more of prison time than Judge Mueller imposed.

As you're aware, The Federal Government treats these type of cases very severely. A person's prior criminal history plays a great role in determining a baseline minimum sentence. Emanuel had a prior conviction for sexual battery on a minor, was on the PC 290 list, and had a conviction for possession of child pornography (with a violation of probation for possession of child pornography as well). The police  reports have a common theme where Emanuel continues to associate with young male minors, despite being on probation/parole for sexual crimes involving young male minors. I think this aspect is what concerns the US Attorney and probation the most -- and thankfully, Judge Muller did not punish Emanuel for this by imposing a higher sentence on the guideline.

It's easy to become insulated and not look at all the bad things about one's case (or a loved one's case). My personal opinion is that the federal sentencing guidelines are unfair and represent excessive punishment. However, my personal opinion is immaterial, as the guidelines represent the law. The task that we have before us is to get a sentence as a low as possible, and in this case we succeeded in terms of having the sentence be on the low-end of the guideline, as it could have easily gone the other way.

I don't think it's wise to appeal from a judgement where the court gave one the lowest sentence on the guideline. Being unhappy with the sentence that one receives is not a legal basis for an appeal. Assuming -- hypothetically -- that you could undue everything that was done today and get re-sentenced by another judge that would be a terrible mistake.

While it's tempting to say "well I should have just had a trial," that's not a productive way to think because really, the only thing that Emanuel had going for him at sentencing was his early admission of guilt. If you take that away, then you're left with probation's recommendation of nearly 40 years. In fact, the court citied Emanuel's early admission of guilt and his contrition as specific reasons to impose the low end of the guidelines.

Over the last five or so years, I've gotten to know Emanuel pretty well (albeit, under unfortunate circumstances). I'm sorry that it has come to this to give him the wakeup call he so desperately needed. I wish that his first brush with the law would have been sufficient to get him on the right track, however, that unfortunately was not the case. I also wish that there was something that I could have said to him or some type of encouragement that I could have given him to correct his behavior. At the end of the day, the decisions that he made were his own and when you're an adult you have the power to make decisions (bad or good). And progressively, it becomes more and more difficult to dig yourself out of a hole that you make for yourself when you repeatedly make the similar poor decisions. This is very sad in Emanuel's case because I think that the basis of his problem is a lack of maturity, as some people are just slower to mature than other people.

At this juncture, I think that it's important to dwell on the positive side of things. In all candor, Emanuel could have easily received a more punitive punishment, and while I disagree with how the guidelines are constructed, the fact that he fell on the minimum side of spectrum is not something to be taken as a given.

- Ryan.

On Mon, Jun 10, 2019 at 3:54 PM Monica Mois <voica22@yahoo.com> wrote:

Good afternoon Ryan,

I have heard from Emanuel the outcome of the sentencing and we are very disappointed about the time received. Emanuel and our family want to appeal the sentence and we know he has only 14 days to do so.

Please help him to file the appeal and go see him as soon as possible.

Thank you.

--- Monica

# SUB-EXHIBIT C-6

## Counsel Communications – Appeal Advice and Variance Discussion (June 12, 2019)

**Description:**
Email from **Ryan Friedman**, dated June 12, 2019, reiterating that an appeal would not be beneficial and stating that the U.S. Attorney's Office would not support a downward variance to **15 years**.

**Relevance:**
Further establishes deficient legal advice concerning appellate rights and sentencing expectations.

Re: Message from EM

From:  Ryan Friedman (ryan@friedman-firm.com)

To:    voica22@yahoo.com; alan@donato.legal

Date:  Wednesday, June 12, 2019 at 05:50 PM PDT


So, my understanding is, that 24 years was the minimum on the guidelines scales?

Correct. The federal sentencing guidelines establish it as the minimum based upon his status (criminal history, etc.)


What happened with 15?


That is below the minimum guideline, but the court may find good cause to deviate from the guideline in situations where it is appropriate.

After Emanuel had written the letter, the US Attorney no longer felt that a 15 year recommendation was appropriate and they chose to oppose any downward deviation from the sentencing guidelines. In order to get the 15, we really needed the US Attorney's support to not argue against it


Can you still go to see him and talk with him?


Yes. I will try to see him tomorrow after court.

# SUB-EXHIBIT C-7

## Counsel Communications – Restitution Discussions (August 2019)

**Description:**
Email correspondence between **Ryan Friedman and Alan Donato**, dated August 6–9, 2019, addressing restitution logistics following sentencing.

**Relevance:**
Demonstrates post-judgment handling of restitution obligations inconsistent with Petitioner's indigence and institutional earnings, supporting due process and sentencing fairness claims.

## Re: Fees to pay

From: Ryan Friedman (ryan@friedman-firm.com)

To: voica22@yahoo.com

Date: Friday, August 9, 2019 at 03:59 PM PDT

Understood, let me see what we can do to negotiate it down and establish a monthly payment plan.

- R.

On Fri, Aug 9, 2019 at 3:44 PM Monica Mois <voica22@yahoo.com> wrote:

Hi Ryan,

unfortunately, I am not able to pay the amount. I am still making payments for your services so it is out of discussion.

Maybe he can make payments as low as $25?

- Monica

On Friday, August 9, 2019, 02:25:45 PM PDT, Ryan Friedman <ryan@friedman-firm.com> wrote:

Hi Monica,

Emanuel is going to be responsible for some portion of restitution. Obviously, we want to make that as small as possible. In these circumstances, it's helpful to offer the US Attorney a small, lump sum that can be immediately paid. On behalf of Emanuel, would you be able to pay $3,000 to the US Attorney as a one time, lump sum, so that they close out the restitution issue completely?

- Ryan.

On Thu, Aug 8, 2019 at 9:08 PM Monica Mois <voica22@yahoo.com> wrote:

Good evening,

today we got a letter from Emanuel where he sent a demand notice that he received on Friday at the Penitentiary. I am attaching the letter because it is mentioned on the letter to forward the letter to his attorney. He also wrote that together with the notice they sent a financial information packet to fill out regarding income, taxes, bank account, loans and assets, like the one he filled out before.

Based on the notice, it looks that he has to pay $5,000 in penalties plus $100 for assessment.

Please let me know if he needs to fill out the financial information packet but as it is my understanding his attorney needs to contact them.

Thank you for your help in this matter.

Monica

On Wednesday, August 7, 2019, 01:23:17 PM PDT, Monica Mois <voica22@yahoo.com> wrote:

Thank you, please let me know of the outcome of the hearing.

- Monica

On Wednesday, August 7, 2019, 11:49:20 AM PDT, Donato Legal <alan@donato.legal> wrote:

Good morning,

We are trying to get the restitution waived or significantly reduced. We have a restitution hearing currently scheduled for August 19.

Best regards,

ALAN J. DONATO, ESQ.
Donato Legal Group
1383 Garden Highway, Suite 100
Sacramento, CA 95833

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review,copying, or distribution of this email (or any attachments thereto) by other than the Donato Legal Group or the intended recipient is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

On Aug 6, 2019, at 1:39 PM, Ryan Friedman <Ryan@Friedman-Firm.com> wrote:

Hi Alan,

Can you please answer Monica's question re: fees on Mr. Mois' matter? She is CC'd on this email. Thanks!

- R.

---------- Forwarded message ---------
From: **Monica Mois** <voica22@yahoo.com>
Date: Tue, Aug 6, 2019 at 10:15 AM
Subject: Fees to pay
To: Ryan Friedman <ryan@friedman-firm.com>

Hi Ryan,

does Emanuel have to pay any restitution fees? He said that he does but you will have another court day in September for those fees to be waived.

Please let me know.

Thank you,

Monica

Exhibit C-7 pg. 3

**EXHIBIT D - Parole Events, Property Seizure, and Evidence Handling (2017)**

**(Roseville Police Department – Placer County;
Citrus Heights Police Department – Sacramento County)**

This exhibit documents the sequence of parole-related arrests, property seizures, and inter-agency evidence handling involving multiple law enforcement jurisdictions.

Specifically, this exhibit includes:

• February 11, 2017 arrest by Roseville Police Department (Placer County) and seizure of ZTE mobile phone
• Attempted retrieval of property and absence of arrest record in Roseville PD system
• April 5, 2017 arrest by Citrus Heights Police Department (Sacramento County)
• Seizure of BLU phone from Petitioner at arrest location
• Residential search and seizure of Roku device and Nintendo Wii
• Property receipt issued only upon specific request
• Undocumented inter-agency transfer of ZTE phone between jurisdictions
• Absence of chain-of-custody documentation

This exhibit is cited in Section IV (Statement of Facts) and Grounds II and IV of the Petition.

Page numbers to be assigned upon final assembly.

**Exhibit D — Parole Events, Property Seizure, and Evidence Handling (2017)**

(Roseville PD – Placer County; Citrus Heights PD – Sacramento County)

Documents the February 11 and April 5, 2017 arrests, seizure of ZTE and BLU phones, residential search, property receipt obtained upon request, and undocumented inter-agency transfer of digital evidence. Supports Grounds II and IV (Due Process and Forensic Uncertainty).

**Provenance**

Information derived from contemporaneous records, property receipts, and the personal observations of **Monica Mois**, the Petitioner's mother, who was present during or immediately after the events described.

Authentication appears in the accompanying **Declaration of Monica Mois** under **28 U.S.C. § 1746.**

**Timeline of Events**

| Date | Event / Agency | Description |
|---|---|---|
| **Feb 11 – late Feb 2017** | Roseville Police / Auburn Jail (Placer County) | On **February 11, 2017**, Petitioner was arrested by the **Roseville Police Department (Placer County, California)** for an alleged parole violation after being observed at a shopping mall in the company of a minor. Petitioner was booked into **Auburn Jail (Placer County)**. After review by Petitioner's parole officer, it was determined that no parole violation had occurred, and Petitioner was released from custody approximately one to two weeks later. |
| **After release (~Mar 1 2017)** | Roseville Police Department | On the way home from jail, Petitioner and his mother stopped at Roseville PD (Placer County) to retrieve his phone seized at the time of his arrest. An officer advised that there was **no record of the arrest or seized property in the Roseville Police Department system**. When shown Emanuel's **Auburn Jail release paper**, she replied it was *"strange, because nothing shows in our system."* They left **without the phone.** |

| Date | Event / Agency | Description |
|---|---|---|
| **Later 2017 (discovered after April arrest)** | Roseville PD → Citrus Heights PD | It was later learned that Emanuel's **ZTE phone** had been **transferred from Roseville PD (Placer County) to Citrus Heights PD (Sacramento County)**, but there is **no known documentation** confirming when or under what chain-of-custody record that transfer occurred. No official paperwork has ever been produced reflecting the transfer or receipt. |
| **Apr 4 2017** | Parole Office – Sacramento | Emanuel's parole conditions were modified to add **"no contact with minors under 18."** He signed acknowledgment of the change. |
| **Apr 5 2017** | Citrus Heights Police Department (Sacramento County) | On April 5, 2017, Petitioner was arrested again in Roseville city—this time by the **Citrus Heights Police Department (Sacramento County, California)**—while Petitioner was physically present in a mall parking lot at the time of arrest. Petitioner's **BLU mobile phone** was in his possession during this arrest and was seized directly from him at that location. While Petitioner was being arrested by Citrus Heights Police Department officers in the parking lot, **other officers from the same agency conducted a search of Petitioner's bedroom residence located in Sacramento County**. During that search, officers seized additional property, including a **Roku streaming device and a Nintendo Wii console**, without Petitioner being present and without his prior knowledge. |
| **Apr 5 2017 (same day)** | CHPD Property Division | Contemporaneous documentation further confirms irregularities in the handling of seized property. A written property receipt was produced by Citrus Heights Police Department **only after Petitioner's mother specifically requested documentation**, and the officer appeared surprised by the request, asking, "Do you need one?" The existence and timing of this receipt indicate that inventory |

8/9

| Date | Event / Agency | Description |
|------|----------------|-------------|
| | | documentation was not created contemporaneously with the seizure, contrary to standard evidence-handling procedures. A copy of the property receipt is included in this exhibit. |
| **Sept 2017** | CHPD Property Division | Petitioner's mother received authorization to retrieve the **BLU phone** after submitting written consent from Emanuel. When she asked about the **Roku and Wii**, she was told **no record existed.** |
| **Post-2017** | — | The **ZTE phone** seized in February 2017, and the **Roku and Wii** seized in April 2017 were never returned or fully accounted for. No verifiable chain-of-custody documentation exists linking the ZTE phone's seizure, transfer, and later forensic use. |

## Observations

- Roseville PD had **no official record** of the February 11 arrest or any seized property at the time of inquiry.

- At a later point, Petitioner's family learned that the previously seized **ZTE mobile phone** had been **transferred from the Roseville Police Department (Placer County) to the Citrus Heights Police Department (Sacramento County)**. However, no formal documentation evidencing this inter-agency transfer—such as a transfer log, chain-of-custody record, or receipt acknowledgment—was ever produced or disclosed. To date, no complete chain-of-custody documentation has been provided establishing:

1. When the ZTE phone was transferred;
2. By whom the transfer was authorized;
3. Which agency maintained control at each stage; or
4. How the integrity of the digital evidence was preserved during the transfer.

These jurisdictional inconsistencies and undocumented transfers raise substantial questions regarding the handling, custody, and integrity of the physical and digital evidence later attributed to Petitioner.

- The Citrus Heights property inventory was created **only after Petitioner's mother demanded it**, showing lack of procedural compliance.
- Petitioner was **not present** during the April 5 home search, yet forensic evidence was later attributed to devices seized from that search.

3/9

These inconsistencies materially undermine the reliability of the forensic conclusions relied upon at sentencing.

## Conclusion

These facts substantiate Petitioner's claims under:

- **Ground II – Misrepresentation and Prosecutorial Misconduct**, and
- **Ground IV – Due Process Violation: Forensic Uncertainty.**

They reveal multiple points of undocumented evidence handling and inter-agency transfer gaps inconsistent with lawful chain-of-custody practice.

## Attachments to Exhibit D.

This exhibit includes parole documentation and property records relevant to the arrest sequence and evidence handling described above. Specifically:

**D-1** consists of the Conditions of Parole in effect beginning August 2015;

**D-2** consists of the Modified/Special Conditions of Parole dated April 4, 2017, reflecting the change in minor-contact restrictions one day prior to Petitioner's April 5, 2017 arrest; and

**D-3** consists of the property receipt obtained from law enforcement reflecting items seized during the search of Petitioner's room.

4/9

## DECLARATION OF MONICA MOIS

I, **MONICA MOIS**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.  I am the mother of Petitioner **Emanuel Mois**.

2.  On **February 11, 2017**, my son was arrested by Roseville Police and taken to Auburn Jail in Placer County, where he remained about **one to two weeks** before release after his parole officer confirmed no violation had occurred.

3.  After release, we went to the Roseville Police Department to retrieve his phone. The officer searched their system and said she found **no record of arrest or property.** Emanuel showed his release paper, and the officer remarked that it was "strange" because nothing appeared in the records. We left without the phone.

4.  We later learned that the **ZTE phone** had been **transferred from Roseville PD to Citrus Heights PD in Sacramento County**, but I never saw any paperwork confirming the transfer or receipt.

5.  On **April 4, 2017**, his parole conditions were modified to prohibit contact with minors under 18.

6.  On **April 5, 2017**, Emanuel was arrested in Roseville while **Citrus Heights Police** searched our home. At the time of the April 5, 2017, arrest, Petitioner's BLU mobile phone was in his possession in the parking lot where he was taken into custody; it was not located inside the residence when officers later conducted a search of his room. While he was being arrested, other officers separately searched his room and seized additional items.

7.  When I asked for a property receipt, the officer appeared surprised and asked, *"Do you need one?"* I said *"Of course I do."* Only then did he hand me a written list of what was taken.

8.  In **September 2017**, I retrieved the BLU phone after Emanuel signed authorization. When I asked about the Roku and Wii, the department said no record was found.

9.  The **ZTE phone**, **Roku**, and **Wii** were never returned or properly documented.

10. These facts are true and based on my personal knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2026, at _____.

_____

**MONICA MOIS**

Exh D - pg 5/9

# DECLARATION OF EMANUEL MOIS

I, **EMANUEL MOIS**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I was arrested on **April 5, 2017**, in the parking lot of a mall in Roseville and was **not present** during the search of my home by Citrus Heights Police.

2. My **BLU C Studio HD phone** was taken from me at arrest. I later learned from my parents that a **Roku** and **Nintendo Wii** were also removed from my room.

3. I did not receive any property receipts or acknowledgments.

4. I was later informed that my earlier **ZTE phone**, initially seized by Roseville PD (Placer County), had been **transferred to Citrus Heights PD (Sacramento County)**, but neither I nor my family ever received documentation of this transfer.

5. I believe these gaps demonstrate mishandling of evidence and an unreliable chain of custody inconsistent with due-process standards.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___March 12___, **2026**, at ___FCE Sheridan___.

_____
**EMANUEL MOIS, Pro Se**
Reg. No. 77348-097
FCI Sheridan

STATE OF CALIFORNIA
SPECIAL CONDITIONS OF PAROLE
CDCR 1515-ADDENDUM (Rev. 04/13)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DIVISION OF ADULT PAROLE OPERATIONS
PAGE 1 OF 8

| PAROLEE NAME: Mois, Emanuel | CDC NUMBER: AV3629 | DATE: 08/17/2015 |
|---|---|---|

You shall comply with all of the following Special Conditions while you are on parole. Any exceptions must be approved in writing by the Unit Supervisor.

### COURT IMPOSED

| | | REASON | INITIAL |
|---|---|---|---|
| X | 1. You shall abide by any court imposed Special Conditions of Parole. | 1 | |

### SUBSTANCE ABUSE

| | | REASON | INITIAL |
|---|---|---|---|
| | 2. You shall submit to urinalysis testing when instructed to do so by a parole agent. | | |
| | 3. You shall not consume, possess, or have access to any alcoholic beverages, liquors, or over-the-counter medication that contains alcohol; (e.g., Nyquil). You shall provide a urine or breath sample for the purpose of detecting the presence of alcohol. | | |
| | 4. You shall not enter a business whose primary purpose is to sell or serve alcoholic beverages. | | |
| | 5. You shall not use, possess, or distribute any narcotic or other controlled substance as defined by law or any paraphernalia related to such substances, without a valid prescription. | | |
| | 6. You shall enroll in and successfully complete a substance abuse treatment program as directed by your parole agent or appropriate parole authority. | | |

### TREATMENT

| | | REASON | INITIAL |
|---|---|---|---|
| X | 7. You shall attend Parole Outpatient Clinic (POC) for an initial evaluation and remain in the mental health treatment program as deemed necessary by a POC clinician | 4 | |
| X | 8. You shall participate in a mental health treatment program as directed by your parole agent. | 4 | |
| X | 9. You shall submit to psychological or physiological assessments to assist in treatment planning and/or parole supervision. | 4 | |
| X | 10. You shall actively participate in a DAPO-approved treatment program specific to Sex Offenders. | 4 | |
| X | 11. You shall report to, enroll in, and actively participate in outpatient sex offender treatment. | 4 | |
| X | 12. You hereby agree to waive psychotherapist-patient privilege, and agree to polygraph examinations while on parole supervision. | 4 | |
| X | 13. Upon reporting to outpatient sex offender treatment, you shall sign the forms presented by the treatment provider, including an information release form and a "Consent to Polygraph" form. | 4 | |

### CONTACT WITH MINORS

| | | REASON | INITIAL |
|---|---|---|---|
| | 14. You shall not have contact with any minor male/female you know or reasonably should know is under the age of 18. "No contact" means no contact in any form, whether direct or indirect, personally, by telephone, by writing, electronic media, computer, or through another person, etc., excluding biological children. | | |
| X | 15. You shall not have any contact with any minor male/female you know or reasonably should know is between the ages of 13 and 18. "No contact" means no contact in any form, whether direct or indirect, personally, by telephone, by writing, electronic media, computer, or through another person, etc., excluding biological children. | 4 | |
| | 16. You shall not have contact with your biological or adopted children. "No contact" means no contact in any form, whether direct or indirect, personally, by telephone, in writing, through electronic media, e-mail, computer, or through another person, etc. | | |
| X | 17. You shall immediately inform your parole agent regarding any contact with a minor. This includes "accidental" or "incidental" contact. | 4 | |
| X | 18. You shall not enter or loiter within 250 Feet of the perimeter of places where children congregate; e.g., day care centers, schools, parks, playgrounds, video arcades, swimming pools, state fairgrounds, county fairgrounds, etc. | 4 | |
| X | 19. You shall not enter any park where children regularly gather without prior written approval from your parole agent. The written approval must be kept with you while you are in the park. | 4 | |

7/9

Corrections and Rehabilitation

## SPECIAL CONDITIONS OF PAROLE

**PAROLEE NAME:** MOIS, EMANUEL          **CDC NUMBER:** AV3629          **DATE:** 04/04/2017

You shall comply with all of the following special conditions while you are on parole. Any exceptions must be approved in writing by the Unit Supervisor.

| SUBSTANCE ABUSE | | REASON |
|---|---|---|
| ✓ | 005. You shall not use, possess, or distribute any narcotic or other controlled substance as defined by law, or any paraphernalia related to such substances, without a valid prescription. | 09 |
| ✓ | 006. You shall enroll in and successfully complete a substance abuse treatment program as directed by your parole agent or appropriate parole authority. | 09 |

| TREATMENT | | |
|---|---|---|
| ✓ | 007. You shall attend Parole Outpatient Clinic (POC) for an initial evaluation and remain in that treatment program as deemed necessary by a Parole Outpatient Clinic clinician | 08 |
| ✓ | 008. You shall participate in a mental health treatment program as directed by your parole agent | 08 |
| ✓ | 009. You shall submit to psychological or physiological assessments to assist in treatment planning and/or parole supervision. | 08 |
| ✓ | 010. You shall report to, and actively participate in a Division of Adult Parole Operations approved treatment program specific to sex offenders. | 11 |
| ✓ | 011. You hereby agree to polygraph examinations while on parole supervision, with the questioning limited to questions about the success of the sex offender treatment program, the crimes(s) for which you were convicted, and related criminal behavior, whether past or future | 11 |
| ✓ | 012. You agree to and will sign any necessary documents including a waiver of psychotherapist-patient privilege to allow full communication between your sex offender management professional and your parole agent as required by Penal Code (PC) Section 3008 (d)(4) and PC Section 290.09. | 11 |
| ✓ | 013. Upon reporting to sex offender treatment, you shall sign the forms presented by the treatment provider, including an information release form and a "Consent to Polygraph" form. | 12 |

| CONTACT WITH MINORS | | |
|---|---|---|
| ✓ | 014. You shall not have contact with any minor male/female you know or reasonably should know is under the age of 18. "No contact" means no contact in any form, whether direct or indirect, personally, by telephone, by writing, electronic media, computer, or through another person, etc., excluding biological or adopted children. | 04 |
| ✓ | 015. You shall not have any contact with any minor male/female you know or reasonably should know is between the ages of 13 and 18. "No contact" means no contact in any form, whether direct or indirect, personally, by telephone, by writing, electronic media, computer, or through another person, etc., excluding biological or adopted children. | 04 |
| ✓ | 017. You shall immediately inform your parole agent regarding any contact with a minor. This | 04 |

DCR SOMS PPST121 - CDC NUMBER: AV3629 NAME: MOIS, EMANUEL                    Page 1 of 7

CITRUS HEIGHTS POLICE DEPARTMENT    Attachment D-3
## PROPERTY AND EVIDENCE SHEET

| CASE #: CH17-0129 | | Offense: 31 |
|---|---|---|
| Property owner name/DOB/XREF: | | Receipt given to: |

**STATUS**
D-Destruction  EM-Embezzled  EV-Evidence  F-Found  L-Lost  MH-5150
R-Recovered (was stolen)  SK-Safekeeping  SW-Search Warrant  SZ-Seized  ST-Stolen

| ITEM # | STATUS | ARTICLE NAME/ DRUG TYPE | BRAND/MAKE | MODEL NAME/NUMBER | SERIAL/OA # | COLOR | VALUE |
|---|---|---|---|---|---|---|---|
| 1 | | WII | NINTENDO | WII | RVU618911?4 | BLACK | |
| Quantity: 1 | | Description: BLACK NINTENDO WII | | | | | Wt: |
| 2 | | ROKU | ROKU | 2950X | 19613500?648 | | |
| Quantity: 1 | | Description: ROKU | | | | | Wt: |
| | | | | | | | |
| Quantity: | | Description: | | | | | Wt: |
| | | | | | | | |
| Quantity: | | Description: | | | | | Wt: |
| | | | | | | | |
| Quantity: | | Description: | | | | | Wt: |
| | | | | | | | |
| Quantity: | | Description: | | | | | Wt: |
| | | | | | | | |
| Quantity: | | Description: | | | | | Wt: |
| | | | | | | | |
| Quantity: | | Description: | | | | | Wt: |
| | | | | | | | |
| Quantity: | | Description: | | | | | Wt: |

**BICYCLE DESCRIPTION – all fields mandatory with serial #**
If more than one bicycle use above lines and include the mandatory information

| Status | Make | | | Model | | Serial/OA # | | License # |
|---|---|---|---|---|---|---|---|---|
| Speeds | | Wheel size | Frame size | Color | Fair market value | Girl/Boy | Miscellaneous description | |

**GUN DESCRIPTION – all fields mandatory with serial #**
If more than one gun use above lines and include the mandatory information

| Status | Make | Model | Caliber | Type | Category | Serial # | Barrel length | Value |
|---|---|---|---|---|---|---|---|---|

I certify under penalty of perjury, under the laws of the State of California, that the foregoing loss report information is true and correct.

Name (print): J. STEVENSON    Signature: _____    Phone #: 916-727-5500    Date: 09-05

Remarks:

| Reporting officer name/ID#: J.STEVENSON | Collected by: J. STEVENSON | Date/time of collection: 09-05-17  1330 |
|---|---|---|
| Reviewing supervisor/ID#: | | Date/time: |
| ☐ Data entry Date: ___ Initial: ___ | ☐ Scanned Date: ___ Initial: ___ | ☐ CLETS entry initial: ___ |

WHITE (CHECK ONE)- ☐ Records  ☐ Property  ☐ Dispatch  ☐ Investigations  ☑ CLETS      YELLOW- Field Receipt

REV. July 2012                                    Exhibit D- pg 9/9  PAGE ___ OF ___

## EXHIBIT E - State Plea Negotiations and Federal Referral Threat

*(Cross-Reference Only)*

**Description and Relevance:**
This exhibit addresses the early **state-court plea posture** of Petitioner's case and the **District Attorney's threat to refer the matter for federal prosecution** if the proposed plea offer was not accepted. The exhibit supports the Procedural History (§ III) and Grounds for Relief concerning prosecutorial leverage and escalation of charges.

**Evidence Supporting This Exhibit:**
The factual support for this exhibit is contained in **Exhibit C (Counsel Email Communications)**, including but not limited to:

- **Exhibit C-1** — Email dated June 16, 2017, from Public Defender Mark Slaughter confirming a tentative **4–5 year state prison offer** and continued settlement negotiations.
- **Exhibits C-2 and C-3** — Emails from counsel describing the State's "hard-line" position and strategic pressure preceding federal referral.

No additional documents are attached to this exhibit.
All referenced materials are incorporated herein **by reference to Exhibit C**.

# EXHIBIT F

## Ineffective Assistance of Counsel — Plea and Appeal Advice

*(Cross-Reference Only)*

**Description and Relevance:**
This exhibit supports **Ground I (Ineffective Assistance of Counsel)** and related claims by documenting counsel's advice concerning plea consequences, sentencing expectations, and the discouragement of appellate review following sentencing.

**Evidence Supporting This Exhibit:**
The factual support for this exhibit is contained in **Exhibit C (Counsel Email Communications)**, including but not limited to:

- **Exhibits C-4 through C-6** — Emails describing counsel's statements that a 292-month sentence was the "lowest possible," that the government would not support a variance, and that an appeal would "look bad" and "would not do anything."
- **Exhibit C-7** — Post-sentencing correspondence reflecting restitution discussions inconsistent with Petitioner's financial status and institutional earnings.

No additional documents are attached to this exhibit.
All referenced materials are incorporated herein **by reference to Exhibit C**.

## EXHIBIT G

## Apology Letter Incident and Counsel's Response (April 2019)

### Description and Relevance:
This exhibit documents the handling and use of an apology letter written by Petitioner in April 2019 following the entry of his guilty plea. The exhibit supports **Ground VII (Improper Handling of the Apology Letter)** by demonstrating that defense counsel allowed the letter to be forwarded to the United States Attorney's Office and later used against Petitioner at sentencing without clarification or mitigation.

### Contents of This Exhibit:

- **Email from Ryan Friedman (April 2019)** confirming that the apology letter had been provided to the prosecution and was being used adversely against Petitioner, and that counsel declined to address or contextualize the letter to avoid "making things worse."

Although this email also appears within **Exhibit C (Counsel Email Communications)**, it is included separately here due to its **direct relevance to Ground VII** and the sentencing court's reliance on the letter to deny a downward variance.

*(Page numbers to be assigned upon final assembly.)*

One Page

Update

:::     Ryan Friedman (ryan@friedman-firm.com)

:.      voica22@yahoo.com; alan@donato.legal; sk@friedman-firm.com

::  ..  Tuesday, April 2, 2019 at 07:01 PM PDT


Hello Monica,

I hope you and your family are well. We wanted to touch base and let you know that we're busy working on Emanuel's sentencing hearing.

Unfortunately, after entering the plea, Emanuel decided to write a letter to T█████family. I don't know why he did this, as it was an incredibly foolish thing to do. When T█████s family received the letter, they immediately called the police and provided a copy of it to the US Attorney's Office. It wasn't until the US Attorney emailed us a copy of the letter that we became aware that he had written and sent it.

In the letter, Emanuel explained that there were no visible images of anything inappropriate found on his phone. Instead, law enforcement found approximately 400 "inappropriate" files in a web browser application, which was unknown to him, that automatically downloaded images from the internet. He explained that even though the images were hidden and unknown to him, he is facing 15 years imprisonment for "receiving" them. He stated he cannot fight his case because of his past and "Citrus Heights cops always had it out for him."

The strategy at sentencing has always been for Emanuel to show the court that he is sincerely remorseful about his actions, and recognizes them to be wrong. A person who recognizes their criminality at an early stage of the proceedings gets a benefit at sentencing because they are perceived as being more amenable to treatment/rehabilitation.

The letter that Emanuel authored shows that his intentions are actually not of remorse. It shows that he believes that the crime was not his fault, and that he was "set up" by the police. This is the opposite of accountability, and I'm flabbergasted that he would choose to send this letter now -- right before sentencing.

We're going to do our best to run damage control, but we wanted to you be aware of this issue. I have attached a copy of the letter to this email.

- Ryan.

**EXHIBIT H - Ninth Circuit Order Denying Authorization for Successive § 2255 Motion (September 19, 2025)**

This exhibit consists of the United States Court of Appeals for the Ninth Circuit's order denying Petitioner authorization to file a successive motion under 28 U.S.C. § 2255, entered on September 19, 2025.

This order establishes that Petitioner has exhausted available remedies under § 2255 and confirms that relief under § 2241, via the § 2255(e) "savings clause," is the only remaining avenue for judicial review.

Cited in:

• Procedural History, ¶ 7

• Jurisdiction and Savings Clause Analysis

UNITED STATES COURT OF APPEALS

**FILED**

FOR THE NINTH CIRCUIT

SEP 19 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

EMANUEL MOIS,

        Applicant,

v.

UNITED STATES OF AMERICA,

        Respondent.

No. 25-4502

ORDER

Before:    SILVERMAN, OWENS, and BRESS, Circuit Judges.

The application for authorization to file a second or successive 28 U.S.C.

§ 2255 motion in the district court is denied. The applicant has not made a prima

facie showing under § 2255(h) of:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Any pending motions are denied as moot. No further filings will be

entertained in this case.

**DENIED.**

## Exhibit I - Educational and Rehabilitative Records

This exhibit documents Petitioner's post-sentencing educational achievements and rehabilitative efforts, including completion of degree-level coursework, vocational and cognitive-behavioral programming, and faith-based leadership training while incarcerated.

Included within this exhibit are records reflecting that Petitioner **completed all academic coursework requirements for a Bachelor's Degree in Crusade Evangelism Ministry.** Issuance of the formal diploma is **administratively pending due to an outstanding financial balance,** which is currently being addressed through ongoing payments made on Petitioner's behalf. The absence of a physical diploma does not reflect any academic deficiency or lack of completion.

These materials are submitted to demonstrate Petitioner's sustained rehabilitation, educational advancement, and readiness for reintegration, consistent with *Pepper v. United States,* 562 U.S. 476 (2011), and the rehabilitative purposes of sentencing under 18 U.S.C. § 3553(a).

*(Page numbers to be assigned upon final assembly.)*

20 Pages Total

**International Christian College & Seminary**
*Colegio Biblico Internacional y Seminario*
PO Box 530212
Debary, FL 32753
877-391-3741

| **STUDENT** | **RECEIVED** |
| --- | --- |
| Emmanuel Mois #77348-097 | Monica Mois |
| FCI Sheridan | 6801 Albury St |
| PO Box 6000 | Citrus Heights, CA 95621-6323 |
| Sheridan, OR 97378-6000 | |

**Program:**    **Bachelor's Degree in Crusade Evangelism Ministry**    **$1,825.00**

Less Payments:

    As of November 03, 2025    $150.00

    December 29, 2025    $50.00

| $1,825.00 | $200.00 | $1,625.00 |
| --- | --- | --- |

Note:

Monthly payments can be made at the minimum rate as
specified on the Financial Agreement or paid sooner as funds
allow.

(Receive a 5% discount if paid in full.)

☑ Check or Money Order

*Completion of Bachelor's Degree Coursework*

*"He came to that which was his own, but his own did not receive him."* — John 1:11

*Diploma issuance pending administrative balance (paid by parents)*

Enclosed is a sponsorship brochure. If you feel so led, share it with a fellow Christian who is financially able to assist you in relieving the financial
burden of sponsoring your loved one or with someone who is willing to take on the role of sponsoring a student in need of assistance. Sponsors
who are not related to the person they sponsor are eligible for a tax deduction for their sponsorship. Thank you for your continued support!

*Exhibit I – pg.1/20*

# International Christian College and Seminary

Upon recommendation of the Faculty and authority
Of the College Board of Directors

# EMANUEL MOIS

Having satisfactorily completed the prescribed Course of Study, is hereby granted the
Degree of

# ASSOCIATE IN CRUSADE EVANGELISM MINISTRY

On the 24th day of June, the year of our Lord 2020 by authority and order

Alexander Varga
President

William McCorkle
Dr. William McCorkle, PhD
Director of Academic Affairs

Exhibit I
pg.2/20

# INTERNATIONAL CHRISTIAN COLLEGE and SEMINARY

## Transcript of Records

Name:    Emanuel Mois
Address: PO Box 6000
         Sheridan, OR  97378-6000

Date of Birth: 12/07/1992
Student ID Number: 77348-097

**Degree:**    Associate's Degree in
**Crusade Evangelism Ministry**

**Start Date:** October 29, 2018
**Graduation Date:** June 24, 2020

**Comments:**
GRADUATION WITH HIGHEST HONORS

| CODE | COURSE | GRADE | Credits | CODE | COURSE | GRADE | Credits |
|------|--------|-------|---------|------|--------|-------|---------|
| OTS101 | Introduction to the Old Testament | A | 3.0 | REN103 | Communion With God | A | 3.0 |
| NTS101 | Introduction to the New Testament | A | 3.0 | REN204 | Naturally Supernatural | A | 3.0 |
| BLB101 | Biblical Interpretation I | A | 3.0 | LEA103 | Gifted to Succeed | A | 3.0 |
| STS101 | Systematic Theology I | A | 3.0 | REN206 | Increasing the Anointing | A | 3.0 |
| SCT101 | Interpreting Scripture I | A | 3.0 | REN208 | War in the Spirit | A | 3.0 |
| HST 110 | History of Evangelism & Revival | A | 3.0 | EVA 104 | Formation of Evangelistic Strategy | A | 3.0 |
| EVA 101 | Crusade Evangelism | A | 3.0 | LEA303 | Developing the Leader Within | A | 3.0 |
| EVA 102 | The Evangelist & Ministry | A | 3.0 | HEA102 | Take Charge of Your Health | A | 3.0 |
| EVA 103 | Introducing World Missions | A | 3.0 | EVA 111 | Evangelism & Christian Life | A | 3.0 |
| MIN210 | Five Fold Ministry Gifts | A | 3.0 | WOR101 | Believer's Worship I | A | 3.0 |

*****Conclusion of Transcript*****

**Total Credits: 60**

**GPA**                                                        **4.0**

*Prepared by*: ICCS, 02/22/2024

International Christian College & Seminary
Colegio Biblico Internacional y Seminario
PO Box 530212
Debary, FL 32753
877-391-3741
Email:
Website:

OFFICIAL IF IN THREE COLORS

**REGISTRAR**

INTERNATIONAL CHRISTIAN COLLEGE
AND SEMINARY

77348-097

Alexander Varga
President

TO VERIFY THIS TRANSLUCENT GLOBE ICONS MUST BE VISIBLE WHEN HELD IN **TOWARD** A LIGHT SOURCE

**RAISED SEAL NOT REQUIRED**

- This official College transcript is printed on security paper
- A black and white document is not official

PURSUANT TO THE FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT OF 1974, INFORMATION CONTAINED HEREIN SHALL NOT BE RELEASED TO A THIRD PARTY WITHOUT THE WRITTEN AUTHORIZATION OF THE STUDENT.

Exhibit I
pg. 3/20

THE WORDS "UNOFFICIAL" AND "COPY" APPEAR ON PHOTOCOPY



# GOSPEL ECHOES TEAM
## Certificate

This is to certify that **EMANUEL MOIS**

has successfully completed the Series of 8 Courses by

## GOSPEL ECHOES TEAM
## SCHOOL OF CORRESPONDENCE BIBLE STUDIES

1. GOD'S GREAT LOVE
2. GROWING IN THE CHRISTIAN LIFE
3. SHARING YOUR CHRISTIAN FAITH
4. GROWING TOWARD MATURITY
5. THE CHRISTIAN WAY IN MARRIAGE
6. GROWING THROUGH BIBLE STUDY
7. GOOD NEWS ABOUT JESUS
8. THE ACTS OF THE APOSTLES

Granted this **18th** day of **December**, 20 **18**

" Study to show thyself approved unto God, a workman that needeth not to be ashamed, rightly dividing the word of truth." 2 Timothy 2.15

Bev, Grader

BIBLE COURSE INSTRUCTOR

PRESIDENT

Exhibit I pg 4/20

AMERICAN BIBLE ACADEMY

P.O. Box 1627

Joplin, MO 64802


OFFICIAL STUDENT TRANSCRIPT


Emanuel Mois                                    STUDENT ID:      438642
     REG# 77348-097
FCI Herlong                                     DATE ISSUED:     6/8/2022
PO Box 800
Herlong, CA  96113                              DATE ENROLLED:   1/26/2021

| COURSE NUMBER | COURSE DESCRIPTION | DATE COMPLETED | CREDITS | GRADE |
|---|---|---|---|---|
| 102-1 | Christian Doctrine - Vol. 1 | 3/9/2021 | 1 | 86 |
| 002-1 | Book of Acts - Vol. 1 | 6/8/2021 | 1 | 92 |
| 104 | Gospel of Mark | 9/21/2021 | 1 | 94 |
| 108 | Ephesians & Colossians | 6/7/2022 | 1 | 95 |
| 001 | Gospel of John | 1/26/2021 | NON-CRD | 93 |
| 102-2 | Christian Doctrine - Vol. 2 | 4/13/2021 | 1 | 93 |
| 002-2 | Book of Acts - Vol. 2 | 8/3/2021 | 1 | 93 |
| 105 | Galatians/Philippians | 11/2/2021 | 1 | 93 |
| 107 | Christian Doctrine - Vol. 3 | 12/7/2021 | 1 | 97 |

The Grading system used by ABA is as follows:        Not valid as an official
    A+   99-100      C+   77-79                       transcript without the
    A    95-98       C    74-76                       signature of the ABA
    A-   90-94       C-   70-73                       Registrar or the ABA
    B+   87-89       D+   67-69                       Director and the raised
    B    84-86       D    64-66                       Seal of the American
    B-   80-83       D-   60-63                       Bible Academy.
                     F    0-59

Signature: _____

Please visit our websites www.abarc.org and www.arm.org

Exhibit I pg. 5/20



# PRISON MINISTRIES PROGRAM

## THIS DIPLOMA IS PRESENTED TO

### *Emanuel Mois*

in recognition of meeting the requirements of the
Global University Prison Ministries Program
and granting all the rights and privileges thereof.

Then you
will know
the truth,
and
the truth
will set
you free

John 8:32
(NIV)

Presented this __21st__ day of __January__ 2025

*Chaplain F. A. Sanderson*



GLOBAL
UNIVERSITY

Exhibit I pg. 6/20

# Student Transcript

**EMANUEL MOIS**
United States
**Prison:**
F C I VICTORVILLE MED II
PO BOX 3850
ADELANTO, CA 92301-0709
United States

| Curriculum | Completed | Awarded |
|---|---|---|
| Advanced series | Jun 2 2020 | Jun 2 2020 |

| Code | Publisher | Course | Completed | Units Earned | Average Grade |
|---|---|---|---|---|---|
| | | | Jun 7 2017 | 0 | |
| BTW | Emmaus Worldwide | Born to Win | Jun 16 2017 | 1 | 98% |
| GMA | Emmaus Worldwide | The Greatest Man Alive | Jul 27 2017 | 1 | 100% |
| MMM | Emmaus Worldwide | Men Who Met the Master | Jul 27 2017 | 1 | 100% |
| WBT | Emmaus Worldwide | What the Bible Teaches | Aug 17 2017 | 1 | 92% |
| GIT | Emmaus Worldwide | God Is There | Aug 28 2017 | 1 | 98% |
| DTWJ | Emmaus Worldwide | Doing Time With Jesus | Sep 21 2017 | 1 | 98% |
| JTB | Emmaus Worldwide | A Journey Through the Bible | Sep 27 2017 | 1 | 95% |
| HTSS | Emmaus Worldwide | How to Succeed on the Streets | Oct 19 2017 | 1 | 97% |
| LCL | Emmaus Worldwide | Lessons for Christian Living | Oct 24 2017 | 1 | 97% |
| LK | Emmaus Worldwide | The Gospel of Luke | Dec 7 2017 | 2 | 92% |

Exhibit I - Page 7/20

| Code | Publisher | Course | Completed | Units Earned | Average Grade |
|------|-----------|--------|-----------|--------------|---------------|
| WTW | Emmaus Worldwide | Walkin the Walk | Jan 16 2018 | 1 | 95% |
| SSS | Emmaus Worldwide | Securely Saved and Sure of It! | Jan 25 2018 | 2 | 97% |
| ITHR | Emmaus Worldwide | I'll Take the High Road | Mar 8 2018 | 2 | 91% |
| MAGW | Emmaus Worldwide | Managing Anger God's Way | Mar 8 2018 | 2 | 91% |
| | | | Mar 28 2018 | 0 | |
| SB | Emmaus Worldwide | Summary of the Bible | Apr 24 2018 | 2 | 88% |
| GNA | Emmaus Worldwide | Good News for All | Jun 18 2018 | 1 | 98% |
| GAL | Emmaus Worldwide | The Letter to the Galatians | Jun 25 2018 | 2 | 94% |
| | | | Aug 20 2018 | 2 | 97% |
| | | | Oct 8 2018 | 2 | 99% |
| JAS | Emmaus Worldwide | The Letter of James | Nov 19 2018 | 2 | 89% |
| GCG | Emmaus Worldwide | Guide to Christian Growth | Dec 3 2018 | 1 | 96% |
| ACTS | Emmaus Worldwide | The Book of Acts | Jan 3 2019 | 2 | 92% |
| HSW | Emmaus Worldwide | The Holy Spirit at Work | Jan 3 2019 | 1 | 92% |
| | | | Jan 16 2019 | 0 | |
| PPPW | Emmaus Worldwide | Perfect Person Perfect Work | Feb 19 2019 | 2 | 92% |
| PFL | Emmaus Worldwide | Proverbs for Life | Mar 19 2019 | 1 | 98% |
| EPH | Emmaus Worldwide | The Letter to the Ephesians | Apr 2 2019 | 2 | 93% |

Exhibit I - 8/20

| Code | Publisher | Course | Completed | Units Earned | Average Grade |
|---|---|---|---|---|---|
| NTS | Emmaus Worldwide | New Testament Survey | May 6 2019 | 2 | 90% |
| 1COR | Emmaus Worldwide | The First Letter to the Corinthians | May 23 2019 | 2 | 91% |
| 2COR | Emmaus Worldwide | The Second Letter to the Corinthians | Aug 1 2019 | 2 | 88% |
| THES | Emmaus Worldwide | The Letters to the Thessalonians | Sep 12 2019 | 2 | 93% |
| GWT | Emmaus Worldwide | God's Word Is Truth | Oct 21 2019 | 2 | 91% |
| MK | Emmaus Worldwide | The Gospel of Mark | Dec 19 2019 | 2 | 96% |
| PCP | Emmaus Worldwide | Philippians, Colossians, and Philemon | Jun 2 2020 | 2 | 98% |
| DBS | Emmaus Worldwide | Discovering Bible Study | Dec 15 2020 | 2 | 92% |
| JOS | Emmaus Worldwide | Joseph: A Life of Virtue | Dec 17 2020 | 1 | 100% |
| SSYA | Emmaus Worldwide | Study to Show Yourself Approved | Feb 1 2021 | 4 | 87% |
| ER18GEN | Emmaus Worldwide | Genesis 1-12: In the Beginning | Apr 1 2021 | 3 | 94% |
| 2PETJ | Emmaus Worldwide | The Second Letter of Peter, and Jude | Jun 9 2021 | 2 | 95% |
| 1PET | Emmaus Worldwide | The First Letter of Peter | Jun 9 2021 | 2 | 99% |
| ER7DTS | Emmaus Worldwide | Dying to Self | Jul 19 2021 | 2 | 99% |

| | | |
|---|---|---|
| **Average Grade** | | **95%** |
| **Total Units** | | **68** |

Exhibit I - 9/20

**Rock of Ages Ministries**
**PO Box 2308**
**Cleveland ,TN  37320**
**Student Transcript**

Emanuel Mois 77348-097
FCI Sheridan
PO Box 5000
Sheridan OR 97378

55097

| Course | Grade | Date Comp | Date Sent | Course | Grade | Date Comp | Date Sent |
|---|---|---|---|---|---|---|---|
| Matthew | 102 | 3/27/2019 | 11/8/2018 | Prayer | 105 | 5/4/2018 | 3/15/2018 |
| Mark | 103 | 11/8/2018 | 7/12/2018 | Praying Effectively For the | 105 | 9/7/2018 | 7/12/2018 |
| Luke | 103 | 1/6/2020 | 3/27/2019 | Prisoner's Soul-Winning Ha | 101 | 4/7/2022 | 2/23/2022 |
| John | 101 | 5/4/2018 | 3/15/2018 | Regeneration | 101 | 3/15/2018 | 1/30/2018 |
| Acts | 101 | 3/27/2019 | 9/7/2018 | Repentance | 101 | 3/15/2018 | 1/30/2018 |
| Romans | 101 | 7/12/2018 | 5/4/2018 | Root of Bitterness | 105 | 3/15/2018 | 1/30/2018 |
| I Corinthians | 103 | 1/15/2020 | 5/24/2019 | Temptation | 105 | 7/12/2018 | 5/4/2018 |
| II Corinthians | 103 | 1/15/2020 | 5/24/2019 | That Others May Know | 101 | 9/7/2018 | 7/12/2018 |
| Galatians | 103 | 11/8/2018 | 7/12/2018 | Victorious Living | 101 | 11/8/2018 | 9/7/2018 |
| Ephesians | 100 | 1/15/2019 | 11/8/2018 | Why be Born Again | 105 | 3/15/2018 | 1/30/2018 |
| Philippians | 99 | 5/24/2019 | 3/27/2019 | Winning The Sincere | 99 | 11/8/2018 | 9/7/2018 |
| Colossians | 97 | 5/24/2019 | 3/27/2019 | Genesis I | 102 | 6/11/2021 | 3/4/2021 |
| I & II Thessalonians | 102 | 8/22/2019 | 3/27/2019 | Genesis II | 95 | 6/30/2021 | 3/4/2021 |
| I & II Timothy | 102 | 8/22/2019 | 5/24/2019 | That Ye May Know | 100 | 1/30/2018 | 12/31/2017 |
| Titus & Philemon | 101 | 8/22/2019 | 5/24/2019 | Exodus | 101 | 3/3/2022 | 12/31/2021 |
| Hebrews | 102 | 1/6/2020 | 5/24/2019 | Leviticus | 102 | 3/3/2022 | 12/31/2021 |
| James | 102 | 6/17/2020 | 4/16/2020 | Numbers | 103 | 10/27/2021 | 8/4/2021 |
| I & II Peter | 100 | 7/8/2020 | 4/16/2020 | Deuteronomy | 101 | 12/31/2021 | 10/27/2021 |
| I  II & III John | 102 | 7/8/2020 | 4/16/2020 | Joshua | 101 | 1/7/2022 | 10/27/2021 |
| Jude & Revelation | 102 | 7/8/2020 | 4/16/2020 | Judges | 102 | 1/7/2022 | 10/27/2021 |
| Anyone Can Do It | 103 | 1/15/2019 | 11/8/2018 | Ruth | 102 | 3/4/2021 | 12/18/2020 |
| Assurance | 105 | 5/4/2018 | 3/15/2018 | I - 2 Samuel | 104 | 4/7/2022 | 2/23/2022 |
| Baptism | 105 | 5/4/2018 | 3/15/2018 | Esther | 102 | 3/4/2021 | 12/18/2020 |
| Beauty for Ashes | 105 | 9/7/2018 | 7/12/2018 | 1 - 2 Kings | 103 | 12/13/2022 | 10/5/2022 |
| Bible | 105 | 5/4/2018 | 3/15/2018 | Ezra-Nehemiah | 101 | 3/3/2022 | 1/7/2022 |
| Born A Slave to Sin | 102 | 3/15/2018 | 1/30/2018 | Job | 101 | 8/4/2021 | 6/4/2021 |
| Breaking the Bondage | 100 | 7/12/2018 | 5/4/2018 | 1 - 2 Chronicles | 104 | 12/29/2023 | 9/29/2023 |
| Dealing With Guilt | 105 | 7/12/2018 | 5/4/2018 | Psalms 1-50 | 101 | 11/11/2020 | 7/8/2020 |
| Dev.I Godly Woman | | | | Psalms 101-150 | 100 | 12/18/2020 | 7/8/2020 |
| Dev.I Mature Man | 100 | 11/11/2020 | 6/17/2020 | Psalms 51-100 | 101 | 11/11/2020 | 7/8/2020 |
| Devotional Book  II | 100 | 12/18/2020 | 6/17/2020 | Proverbs | 102 | 3/4/2021 | 12/18/2020 |
| Devotional Book  III | 102 | 12/18/2020 | 6/17/2020 | Ecclesiastes | 102 | 3/4/2021 | 12/18/2020 |
| Devotional Book  IV | 103 | 9/3/2020 | 7/8/2020 | Song Of Solomon | 94 | 3/4/2021 | 12/18/2020 |
| Faith | 105 | 3/15/2018 | 1/30/2018 | Isaiah | 102 | 4/7/2022 | 2/23/2022 |
| How to be an Overcomer | 105 | 7/12/2018 | 5/4/2018 | Jeremiah | 102 | 2/23/2022 | 1/7/2022 |
| Loneliness | 105 | 11/8/2018 | 9/7/2018 | Ezekiel | 101 | 2/23/2022 | 1/7/2022 |
| New Beginnings Part I | 105 | 7/12/2018 | 5/4/2018 | Daniel | 92 | 6/30/2021 | 3/4/2021 |
| New Beginnings Part II | 105 | 7/12/2018 | 5/4/2018 | Hosea | 88 | 6/30/2021 | 3/4/2021 |
| Power For Soul Winning | 101 | 5/24/2019 | 3/27/2019 | Joel - Amos - Obadiah | 102 | 9/29/2021 | 8/4/2021 |

Date of report: 12/29/2023 1:44:51 PM

Exhibit I - Page 10/20

**Rock of Ages Ministries**
**PO Box 2308**
**Cleveland ,TN  37320**
**Student Transcript**

Emanuel Mois 77348-097
FCI Sheridan
PO Box 5000
Sheridan OR 97378

55097

| Course | Grade | Date Comp | Date Sent | Course | Grade | Date Comp | Date Sent |
|---|---|---|---|---|---|---|---|
| Jonah - Micah - Nahum | 102 | 9/29/2021 | 8/4/2021 | | | | |
| Habakkuk-Zephaniah-Hagg | 103 | 9/29/2021 | 8/4/2021 | | | | |
| Lamentations | 97 | 9/29/2021 | 8/4/2021 | | | | |
| Zechariah - Malachi | 100 | 9/29/2021 | 8/4/2021 | | | | |

Exhibit I - page 11/20

Date of report: 12/29/2023 1:44:51 PM

Exh. Page 12/20

# CERTIFICATE OF
# COMPLETION

### Presented to

# Emanuel Mois #77348-097

### Presented for successfully completing.

**The Drug Abuse Education Course is a minimum of 12 hours. The goal of this program is to help the offender to make an accurate evaluation of the consequences of his/her alcohol/drug use and consider the need for treatment.**

**Federal Correctional Institution**
**Herlong, California**
**December 15, 2022**

R. SANTIAGO, DTS
Drug Treatment Specialist

# Certificate of Baptism

### *FCI Herlong Chaplaincy Services Department*

Certifies that

# Emanuel Mois

Was Baptized As His Confession of Faith
on
October 3, 2022
at
FCI Herlong Chapel

_____
**Staff Chaplain**
J. Hammiel

10-3-2022
_____
**Date**

Exhibit I - page 13/20



## Individualized Needs Plan - Program Review    (Inmate Copy)
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MOIS, EMANUEL  77348-097

SEQUENCE: 02171167
Team Date: 02-13-2026

|  |  |  |  |
|---|---|---|---|
| Facility: | SHE  SHERIDAN FCI | Proj. Rel. Date: | 01-16-2038 |
| Name: | MOIS, EMANUEL | Proj. Rel. Mthd: | GOOD CONDUCT TIME |
| Register No.: | 77348-097 | DNA Status: | ATW03183 / 07-16-2019 |
| Age: | 33 |  |  |
| Date of Birth: | 12-07-1992 |  | *OPT : 23* |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

### Inmate Photo ID Status

| |
|---|
| Full status incomplete - Expiration: null |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| SHE | FCI ORD 4A | UNIT 4A ORDERLY | 11-01-2024 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| SHE | ESL HAS | ENGLISH PROFICIENT | 07-16-2019 |
| SHE | GED HAS | COMPLETED GED OR HS DIPLOMA | 05-27-2022 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| SHE MH | C | ACE: THE WEST | 11-03-2025 | 12-19-2025 |
| SHE MH | C | ACE: AMERICAN LIVES | 08-28-2025 | 10-16-2025 |
| SHE MH | C | ACE- SANITATION TECH | 07-03-2025 | 08-14-2025 |
| SHE MH | C | ACE:  CREATIVE WRITING 1 | 03-20-2025 | 05-19-2025 |
| SHE MH | C | ACE:  APPLIED MATHEMATICS | 03-17-2025 | 05-19-2025 |
| SHE MH | C | ACE: ANCIENT MYSTERIES | 12-30-2024 | 03-10-2025 |
| SHE MH | C | ACE: HSTRY OF WORLDS RELIGIONS | 12-12-2024 | 03-10-2025 |
| SHE MH | C | ACE:  PUBLIC SPEAKING 1 | 09-19-2024 | 12-18-2024 |
| HER | C | ACE DRESS FOR SUCCESS (RPP 6) | 03-02-2023 | 03-02-2023 |
| HER | C | ACE MANNERS FOR MEN (RPP 6) | 03-08-2023 | 03-08-2023 |
| HER | C | DIST LA2 | 01-23-2023 | 01-27-2023 |
| HER | C | CREDIT EVAL AND REPAIR (RPP 3) | 01-05-2023 | 01-05-2023 |
| HER | C | ACE BUSINESS ETIQUETTE | 12-19-2022 | 12-19-2022 |
| HER | C | DIST SCI1 | 12-20-2022 | 12-24-2022 |
| HER | C | DIST MATH2 | 11-23-2022 | 11-27-2022 |
| HER | C | DIST SS1 | 11-22-2022 | 11-26-2022 |
| HER | C | ACE JOB INTERVIEWING (RPP 2) | 10-07-2022 | 10-07-2022 |
| HER | C | ACE TIME MANAGEMENT (RPP 6) | 10-11-2022 | 10-11-2022 |
| HER | C | DIST THINK | 10-10-2022 | 10-14-2022 |
| HER | C | DISTANCE INFO | 10-03-2022 | 10-07-2022 |
| HER | C | ACE NUTRITION & MEALS (RPP 1) | 10-03-2022 | 10-03-2022 |
| HER | C | DIST WRIT2 | 10-31-2022 | 11-04-2022 |
| HER | C | RESUME WRITING 101 (RPP 2) | 09-13-2022 | 09-13-2022 |
| HER | C | DIST SCI1 | 09-26-2022 | 09-30-2022 |
| HER | C | DIST WRIT2 | 08-19-2022 | 08-24-2022 |
| HER | C | DIST LA1 | 07-18-2022 | 07-22-2022 |
| HER | C | DIST LA2 | 07-04-2022 | 07-08-2022 |
| HER | C | DISTANCE INFO | 07-06-2022 | 07-10-2022 |
| HER | C | DIST THINK | 07-12-2022 | 07-16-2022 |
| VVM | C | SHU TWENTY THOUSAND LEAGUES | 12-14-2021 | 12-21-2021 |
| VVM | C | SHU CHOLESTEROL CLASS | 12-19-2021 | 01-01-2022 |
| VVM | C | SHU SKELETAL SYSTEM CLASS | 11-21-2021 | 12-04-2021 |
| VVM | C | SHU STRETCHING CLASS | 10-31-2021 | 11-13-2021 |
| VVM | C | SHU PREVENTING CARDIO DISEASE | 10-09-2021 | 10-23-2021 |
| VVM | C | SHU ATHLETES AND EFFICENTHEART | 09-19-2021 | 10-03-2021 |

*Exhibit I - page 14/20*



## Individualized Needs Plan - Program Review    (Inmate Copy)

**Dept. of Justice / Federal Bureau of Prisons**

Plan is for inmate: MOIS, EMANUEL  77348-097

SEQUENCE: 02171167
Team Date: 02-13-2026

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| VVM | C | SHU WEIGHT MANAGEMENT CLASS | 08-29-2021 | 09-11-2021 |
| VVM | C | BEGINNERS GREETING CARD CLASS | 06-30-2021 | 08-04-2021 |
| VVM | C | BEGINNERS WELLNESS CLASS | 06-14-2021 | 07-19-2021 |
| VVM | C | LOCKDOWN WEIGHT MANAGEMENT | 03-01-2021 | 03-23-2021 |
| VVM | C | LOCKDOWN NUTRITION | 03-07-2021 | 03-21-2021 |
| VVM | C | RPP FCC AIDS AWARENESS (C1) | 11-05-2020 | 11-05-2020 |
| ATW | C | R6-PAINLESS SPELLING | 09-01-2019 | 10-01-2019 |
| ATW | C | R3-CONSUMER MATH, BANKING | 09-01-2019 | 10-01-2019 |
| ATW | C | R2-CONSUMER MATH, CAREER PREP | 09-01-2019 | 10-01-2019 |
| ATW | C | R3-CONSUMER MATH, WORK W/FOOD | 09-01-2019 | 10-01-2019 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 12-17-2019 |
| CARE1-MH | CARE1-MENTAL HEALTH | 07-16-2019 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 07-25-2019 |
| YES F/S | CLEARED FOR FOOD SERVICE | 07-25-2019 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| ED COMP | DRUG EDUCATION COMPLETE | 12-15-2022 |
| NR WAIT | NRES DRUG TMT WAITING | 02-20-2024 |

### FRP Payment Plan

| Most Recent Payment Plan |
|---|

**FRP Assignment:**    **PART**    **FINANC RESP-PARTICIPATES**    **Start: 08-29-2025**

Inmate Decision:    **AGREED**    **$25.00**    Frequency: **QUARTERLY**

Payments past 6 months:    **$50.00**    Obligation Balance: **$4,752.35**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| | | | | | COMPLETEDZ |

*NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

| | | | | AGREED | |
|---|---|---|---|---|---|

| Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|
| | 12-10-2025 | SHE | PAYMENT | INSIDE PMT | $25.00 |
| | 09-10-2025 | SHE | PAYMENT | INSIDE PMT | $25.00 |

### FRP Deposits

Payments commensurate ?    Y

### Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| FTC INELIG | FTC-INELIGIBLE-REVIEWED | 09-18-2020 |
| INELIG AUT | FTC-INELIGIBLE OFF CODE - AUTO | 12-17-2019 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 02-09-2026 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 02-09-2026 |
| N-COGNTV N | NEED - COGNITIONS NO | 02-09-2026 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-05-2022 |

*Exhibit I - page 15/20*



## Individualized Needs Plan - Program Review    (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: MOIS, EMANUEL  77348-097

SEQUENCE: 02171167
Team Date: 02-13-2026

| Assignment | Description | Start |
|---|---|---|
| N-EDUC N | NEED - EDUCATION NO | 02-09-2026 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 02-09-2026 |
| N-FM/PAR Y | NEED - FAMILY/PARENTING YES | 02-09-2026 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 02-09-2026 |
| N-MEDICL N | NEED - MEDICAL NO | 02-09-2026 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 02-09-2026 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 02-09-2026 |
| N-TRAUMA N | NEED - TRAUMA NO | 02-09-2026 |
| N-WORK Y | NEED - WORK YES | 02-09-2026 |
| R-MED | MEDIUM RISK RECIDIVISM LEVEL | 02-09-2026 |

### Progress since last review

you have maintained clear conduct since your last review. you are enrolled in criminal thinking, you are on the waitlist for occupational education.

### Next Program Review Goals

enroll and participate in occupational education.
enroll and participate in threshold program

### Long Term Goals

By August 2027
Participate in and complete Criminal Thinking
Participate in and complete Occupational Education
Participate in and complete threshold program.

### RRC/HC Placement

No.
Management decision - will review when 17-19 months prior to PRD.

### Comments

Treaty Transfer: Eligible and interested.

Exhibit I-page 16/20

**FCI SHERIDAN**

**PSYCHOLOGY PROGRAMS**

# *Certificate of Completion*

Presented to

## Emanuel Mois

Reg # 77348-097

For Successful Completion of

## First Step Act:

## Anger Management

_D. Miles_ (signature)

2/7/2025

**D. Miles, Specialty Treatment Program Specialist**

**Date**

**FCI SHERIDAN**

**PSYCHOLOGY PROGRAMS**

# Certificate of Completion

Presented to

## Emanuel Mois

Reg # 77348-097

For Successful Completion of at least 12 Hours of

## Intro to

## Cognitive Behavioral Therapy

_____

A. So, Psychology Doctoral Intern

9/24/2024

Date

Exhibit I- page 19/20

## FCI SHERIDAN
## PSYCHOLOGY PROGRAMS

# *Certificate of Completion*

Presented to

## Emanuel Mois

Reg # 77348-097

For Successful Completion of

## First Step Act:
## Basic Cognitive Skills

**9/24/2024**

**B. Roberts, Specialty Treatment Program Specialist**

**Date**

Exhibit I page 20/20

## FCI SHERIDAN

### PSYCHOLOGY PROGRAMS

# Certificate of Completion

Presented to

## Emanuel Mois

Reg # 77348-097

For Successful Completion of

## First Step Act:

## Emotional Regulation

D. Miles, Specialty Treatment Program Specialist

8/5/2025

Date

**EXHIBIT J - Character Reference Letters (Pre-Arrest Community References)**

This exhibit contains character reference letters written by individuals who knew Petitioner **prior to his arrest in 2017**. These letters reflect Petitioner's character, conduct, and community involvement **before the instant offense and prior to federal prosecution**.

These materials are submitted to demonstrate Petitioner's baseline character, social functioning, and rehabilitative potential, and to provide context relevant to **Ground VI (Youth and Diminished Capacity)** and **Ground VIII (Post-Sentencing Rehabilitation)**.

(Page numbers to be assigned upon final assembly.)

11 pages Total

May 10 2017

Character reference. **EMANUEL MOIS**

TO WHOM IT MAY CONCERN.

I have known Emanuel for nearly 5 years as one of our parishioners. He has been a regular attendee for most of this time. He and I have had many opportunities to talk and I've counseled and encouraged him on numerous occasions.

Emanuel has all the potential of being a stable and productive citizen. Over the last 6 months we saw his renewed efforts to make sure he kept the rules and requirements assigned to him. Frankly I do not know nor understand why he was facing additional sentencing and was totally surprised when he was taken back in.

My prayer is that he will be granted every possible chance to be fully restored to his family, his friends and be given a chance for a successful future.

Feel free to contact me anytime at (916) 761-763 or 3400 Nouveau Way. Rancho Cordova CA. 95670

Sincerely

Rev. John Treherne
Associate Pastor. Bayside Church of Citrus Heights

1/11

**Bayside**
CHURCH OF CITRUS HEIGHTS

March 20, 2017

To Whom it may concern,

I am the Associate Director for Small Groups at Bayside of Citrus Heights. I have had the privilege of knowing Emanuel Mois for the last year. I have brought him on the leadership team for 20ThirtySomething here at the church. He has demonstrated good integrity and willingness to serve. I am impressed with his passion to learn and grow as a person. I consider him a valuable member of the team. If you have any questions, please feel free to contact me at the email below.

Sincerely,

Justin Orr
Associate Life Group Director
916-633-1647

2/11

Honorable Judge Kimberly J. Mueller                Kevin Hill
United States District Court                       6720 Lasso Court
Eastern District of California                     Citrus Heights, CA
501 I Street, #4200                                95621
Sacramento, CA 95814

RE: EMANUEL MOIS                                   February 8, 2019

Dear Judge Mueller,

I am writing this letter on behalf of Emanuel Mois. I have met Emanuel at the end
of 2016, and I had the pleasure of having him play the bass for our Celebrate
Recovery Ministry at Bayside of Citrus Heights. Celebrate Recovery is a Christ-
centered, 12 step recovery program for anyone struggling with hurt, pain or
addiction of any kind, and Emanuel attended the program on a weekly basis. We
have also connected during the week, since my Church Bible study and the one he
led, both met on campus on the same week night.

Emanuel is a delightful young man that has a heart for giving his time and energy
for the purpose of helping others. I am aware of his charges and I know he deeply
regrets his actions. I see great potential in Emanuel and I am happy to recommend
him as being a person of good character.

If you have any questions or would like to contact me, please feel free to do so at
916-370-9349.

Sincerely,

Kevin Hill
President & CEO
Legacy Church Resources Inc

3/11

To Whom It May Concern:

I am pleased to write this letter of recommendation for Mr,. Emanuel Mois.

Emanuel has been a volunteer in our Independent Living Skills classroom at Will Rogers Middle School several times during his High School years. As a volunteer, Emanuel has become well-liked by students and staff alike. This is quite an accomplishment considering that the group of young people he works with is not only composed of young adolescents, but individuals who come from diverse cultural backgrounds, and low-income families.

In the time he has spent in our classroom, Emanuel has had a wide range of responsibilities, and he has proven to be efficient, creative, and reliable with each task he has been given. He has performed routine clerical duties such as stapling, collating, and copying, as well as more interpersonal work such as one-on-one assistance with reading and writing. At these times, Emanuel's role alternated between academic assistant and trusted confidant. He listened as students told him about physical abuse they had suffered at home, lack of parental guidance, and financial support, even on the most basic levels. I believe that the students trusted Emanuel and told him about their personal lives because he could identify with them. Like many of the students at our Title one school, Emanuel, also came from a low income background. His family consisted of two hard-working parents and five siblings who emigrated to the U.S. from Romania. With his mother working two jobs and his father having a physical disability, he knew that his family would have to try their hardest to rise above their circumstances.

Additionally, he is bilingual. He speaks English and Romanian. His ability to communicate with the diverse populations that live in our state makes him an asset in any position he may fit in to.

Emanuel is a unique young man, highly-motivated, generous, and compassionate. I am confident that he has much to offer as an Instructional Assistant and will flourish in an environment where he can help others.

Sincerely,

Ms. Carol Metz
Will Rogers Middle School
SDC/ILS Teacher
(9160 971-7889

4/11

Monica Nicoleta Mois
6801 Albury St,
Citrus Heights, CA 95621

RE: Emanuel Mois                                                                                                    May 9, 2017

To Whom It May Concern:

My name is Monica Mois and I am writing this letter on my son's behalf, Emanuel Mois. Currently I work at San Juan Unified School District in the Special Education department. I am also a student at University of Phoenix studying Criminal Justice and Law.

Emanuel grew up with six siblings. We moved with all six children here in United States in 1996, with nothing in our hands. We become citizens of this country in 2001. Even though it was a rough beginning for us as a family, we always wanted our children to do better in life. Our family is based on good moral and religious values. We support each other in the ups and downs of life no matter what. Since Emanuel came home in August 2015 from state prison, he was determined to do good for his life and further his education. At that time, he did not have a high school diploma but he went back to school, and in June of 2016, he received a high school diploma. He also received a grant from school to use it for college. In August of 2016, he enrolled at American River College, where he finished the first semester and was enrolled in the second one.

I observed him that even if he had bad experiences in his young life, Emanuel is a positive person and he does not give up on moving forward even through those challenges. Emanuel is a caring and a giving person. Last year in September I had a shoulder surgery and he was the one to take care of me. He is also active in church, co-leading the 20Thirty something group. Emanuel is a respectful, honest, responsible, and a mature young man. Even if he had restrictions of what to do or go, he was still looking to the positive sides of them. He just wanted to finish his time and go on with is life.

I am praying that a decision will be made to let him continue rehabilitation, which currently for him would be his higher education. Rest assure that with the support of his family and church, he would be able to do so if allowed to.

Sincerely,

Monica N. Mois

5/11

To Whom It May Concern:

I am writing this letter regarding my youngest son, Emanuel Mois. I currently reside in the city of Citrus Heights, CA. In my opinion my son is well behaved, well mannered, respectful and an overall good son. He likes to help out in the community of Citrus Heights and is always willing and ready to help out others with anything they might need.

Emanuel attends church with his family on Sunday's and attends bible study on Wednesday and also attends college group on Tuesday night. I am happy that he is involved within the church. He is a good son who is always trying to better himself all the time. He is willing and motivated to work on his flaws and become a better person.

I know about the allegations against him, and I do not believe that he deserves to go to prison. He is a good person and did not want to cause any harm to anyone. He is friendly and gets along with people of all ages. He is a hard worker and tries his best in all he is involved in. I pray that you would give him a second chance so he can prove that he is a great person. Thank you for taking this into consideration.

Respectfully,

Vasile Mois

*Vosih Mois*

Oana Stirbulescu
1651 Ainwick Dr.
Roseville, CA 9577

May 10, 2017

RE: Emanuel Mois

To Whom It May Concern

Emanuel is my little brother, and I have known him his entire life. Since the day he was born, he was a joy to the family, and a joy to be around. I will always love him and have respect for him, because of who he is and how I know him to be.

Emanuel has always been a caring and loving family member, and has a good sense of humor and always tries to make people laugh. There are six siblings in our family, and he is the youngest, yet when someone wanted to play with his toys when he was younger, he would gladly share them, because he cared about the other sibling. That caring character trait is visible even today. Anytime something happens in the family, he is the first to come and help with what he can. For example, a few months ago, our father had a medical emergency and was in the ER. We all received the call about our father, but Emanuel went to pick up our mother, since he was afraid she would not be able to drive, given the circumstance she was in an emotional state, and they went to the ER together. Emanuel was the one who stayed by our father's side the entire time, and talked to the doctors and nurses about his situation and tried to help my parents understand what was going on. He was there until my father was released, and then drove my parents' home and talked to them to make sure they were alright afterwards. Emanuel helped my parents around the house with chores, and repairs, and has also helped my other siblings with house repairs when asked. Emanuel has never had a lot of money, and still every birthday and every Christmas, he bought a present for each family member (18 people), and I know everyone appreciated that.

Emanuel not only cares for his family, but also for his friends and neighbors. On numerous occasions Emanuel helped neighbors with what he knows how to do, such as with fixing their fence, painting their houses, mowing their lawns, helped with landscaping, and help out with cooking or setting up at community events. He helped his friends fix their cars, and things around their houses, and even taught some to play the guitar. He attends the Bayside of Citrus Heights church with my parents and other siblings, and is one of the bass players at the church, and I know he enjoys that because he gets to do what he loves and is appreciated by the congregation and church staff members.

Emanuel enjoys going to school and learning new things. Despite his past circumstances, he did he wanted to get educated and receive his High School Diploma, and he accomplished that goal in 2015. Everyone was so happy for him and proud of his accomplishment! Emanuel was selected to speak at his graduation ceremony, which was such a huge moment for him and our family! He then enrolled in community college, because his next goal is to attain his Associate Degree. He was enrolled as a full-time student and was enjoying learning in college, even though college courses are sometimes hard for him. If he had a hard time understanding a subject, he would reach out to teachers and colleagues for help, and he helped other colleagues in the subjects he understood. I know that he would like to continue going to college so that he can become something in this life, and contribute to society.

I know that Emanuel is very sorry for what he has done wrong, and he regrets it. He also wants to move forward with his life, and make something of himself, and be a good member in society. He has family and friends who can help him get his life back on track, if given the chance. He has done many things to improve his life and live a better life, as stated above, and I am sure he will continue to do so.

Respectfully yours,

Oana Stirbulescu

Timothy Mois
6152 Marwick Way
Carmichael, CA 95608

**RE: Emanuel Mois**

To Whom It May Concern:

My name is Timothy Mois and I am writing this letter on behalf of my cousin, Emanuel Mois. I currently own and operate a trucking business out of Sacramento, California.

I grew up with Emanuel and have known him for the past 23 years. He is my closest cousin and he and I talked many times about his troubles and I have seen that he deeply regrets his prior actions. His main goal is to further his education and make a better life for himself. I have seen him overcome life, and despite all the hardships, he went to get his high school diploma, and then enrolled in college to pursue a diploma in Business Management and he was doing quite well.

Emanuel is a very respectful, positive, patient, faithful, and hardworking young man. He is a productive and outstanding citizen, and he tried very hard to follow all the rules and regulations imposed on him. I was very surprised to find out that he was taken again into custody because I spent a lot of time with him and never saw him do anything illegal nor anything to violate the conditions of his parole, which we thoroughly discussed.

I am asking you to give him a chance to be fully restored to his family, friends, and community and to be given a chance to future success and to go back to school. If you have any questions, please feel free to call me at (916) 289-0393. I love this kid like a brother and if there's anything I can do to convince you that he has rehabilitated, please contact me. Thank you for your consideration.

Sincerely,

Timothy Mois

8/11

Susana DeValentine
1923 Letterkenny Dr
Lincoln, CA 95648

RE Emanuel Mois                                                                                    May 9 2017

To Whom It May Concern

My name is Susana DeValentine. I am seventy years old and currently retired. I am writing this letter on behalf of Emanuel Mois, who is like a son to me. I have known Emanuel Mois for about six years and met him and his family through friends fifteen years ago. I have communicated with Emanuel via phone, text messages, face to face visits, and had frequent communication with him via family/friend get together, and lunch/dinner outings.

Emanuel comes from a family of six children, that have very strong and positive values and ethics and I have watched all of them support each other's through life's ups and downs. I have watched him turn tough times into positives such as being determined to get his high-school diploma after previously having made the choice to drop out. He was not satisfied with a GED: he wanted the diploma and progressed through the classes at a fast pace. He also enrolled in college to further his education and to become a well-educated person. He finished one semester so far and was enrolled in the second semester.

Emanuel is a very caring, giving, trustworthy, respectful, honest, intelligent, responsible, and mature young man with a great future ahead of him. He has volunteered at his church in many areas including helping individuals, who called the church needing help, at their own homes with minor repairs and any other things they needed him to do. He follows through with his commitments. if he is aware of someone needing assistance or help he jumps in and offers his time. He does this without expectations of anything in return. Emanuel offered to help me when needed repairs at my house or backyard, and helped pack boxes to be sent to Romania where I will move. He showed responsibility dependability, honesty and was very caring throughout this process.

I am aware of Emanuel's legal issues and, based on our conversations, he deeply regrets his actions and it has been evident that he has learned many lessons and wants to move forward in a positive direction. During my encounters with him I have never saw any problems with him and he always looks to life in a positive direction. I am praying that the courts give will him the opportunity to continue the journey of rehabilitation, which at this time is at plea his further education

Emanuel has a strong spiritual connection with his church and is very involved with bible studies and helps out where needed. His relationship with God is a top priority and whom he depends on. He is a hard worker and has continuously set goals for him to keep moving forward. The most current goal is getting a college degree, which he has started working on. I believe this young man is on his way to much bigger and better things and I look forward to watching that take place

Please feel free to contact me if you have any questions at (530) 682-0340

Sincerely

Susana DeValentine

9/11

Debbie Pickering
381 S. Saint Vrain Ave.
Unit 6
Estes Park, CO. 80517
May 7, 2017

RE: Emanuel Mois

To Whom It May Concern,

My name is Debbie Pickering and I am currently retired on disability due to a cervical spinal cord injury. I previously worked as a Regional Compliance Coordinator for a health staffing company.

I have known Emanuel Mois for about 4 years and met him and his family through our church, Bayside of Citrus Heights, after having met his mother at a women's function.   I moved from Fair Oaks, CA to Estes Park, CO in May of 2016 so since then I have communicated with Emanuel via phone, text messages, and a quick face to face visit when I was back in town for 48 hours.  Prior to my move I had frequent communication with him via church activities, family/friend get together, lunch/dinner outings, and phone calls.

Emanuel comes from a family with very strong and positive values and ethics and I have watched all of them support each other's through life's ups and downs.   I have watched him turn difficult times into positives such as being determined to get his high-school diploma after previously having made the choice to drop out. He was not satisfied with a GED; he wanted the diploma and progressed through the classes at a fast pace.

Emanuel is a very caring, giving, trustworthy, honest, and responsible young man with a great future ahead of him. He has volunteered at his church in many areas including helping individuals, who called the church needing help, at their own homes with minor repairs and any other things they needed him to do.   He follows through with his commitments; if he is aware of someone needing assistance or help he jumps in and offers his time.  He does this without expectations of anything in return.  Emanuel offered to help me prepare for my move to Colorado. He came over 3 to 4 days a week for several weeks and helped pack boxes, move heavy items, clean, and anything else I needed done. He also helped load the moving truck. He showed responsibility, dependability, honesty, and was very caring throughout this process. I would fully trust him to have complete access to my home. Had he been able to leave at the time of my move I would have had home drive the truck.

I am aware of Emanuel's legal issues and we have had many conversations about them.  He deeply regrets his actions and it has been evident that he has learned many lessons and wants to move forward in a positive direction. I hope the courts give him the opportunity to continue his journey of rehabilitation, which at this time includes his schooling.

Emanuel has a strong spiritual connection with his church and is very involved with bible studies and helps out where needed.  His relationship with God is a top priority and whom he depends on.
Emanuel is a hard worker and has continuously set goals for him to keep moving forward.  The most current goal is getting a college degree, which he has started working on.  I believe this young man is on his way to much bigger and better things and I look forward to watching that take place.

Please feel free to contact me if you have any questions. 813-541-5684

Your faithfully
Debbie Pickering

Alex Mois
8900 Yawl Court
Citrus Heights, California 95621

January 23, 2019

Robert T. Matsui United States Courthouse
501 I Street
Sacramento, California 95814

To the Honorable Judge Mueller,

My name is Alex Mois and I am writing this letter as a character reference on behalf of Emanuel Mois. I am his older brother and have witnessed Emanuel grow up as a child and become a man over the past several years. I have watched his growth into the person that takes responsibility for his actions and understands his current situation. Through various conversations, he has verbalized to me that he is aware of the severity of his actions and the ramifications of those decisions he made many years ago.

Over the years, I have always known Emanuel to be a kind, caring and compassionate person. He has always been willing to lend a helping hand in times of need. For instance, many years ago when my wife and I had purchased our first home, Emanuel helped us move. He was the only member of either of our families that was willing enough to take time out of his busy schedule. He came and lifted all of our heavy furniture down a flight of stairs from a second story apartment and into our new home. We truly could not have done this by ourselves and without the kindness of my brother. More recently, I have seen Emanuel set goals and accomplish those goals even in seemingly impossible environments. For example, during a previous incarceration, Emanuel was able to be productive with his time and enroll in a high school diploma program which allowed him to complete the credits he needed to finish his high school education. Released midway through this process, Emanuel continued with his ambition and we were able to proudly watch as he walked across the stage to receive his well-earned diploma. He even went on to enroll in college and had begun attending classes at our local community college.

I have spoken to Emanuel many times regarding his serious lack of judgment that he demonstrated in his actions resulting in this incarceration. We have also spoken about future goals and plans to accomplish those goals. I believe Emanuel has the capacity to demonstrate good judgment as I have seen him change. My wife and I have the ability to offer emotional support to Emanuel and continue to pray for him and his safety. I sincerely thank you for your time and consideration in reading my heartfelt letter. Please contact me if you have any further questions or if I can be of any further assistance.

Respectfully,

Alex Mois

Emanuel Mark
Federal Correctional Institution
P.O. Box 5000
Sheridan, OR 97378





Retail

RDC 99

U.S. POSTAGE PAID
FCM LG ENV
SHERIDAN, OR 97378
MAR 13, 2026

97204

$0.00

R2304M115782-01



[ Legal Mail ]

Clerk of the Court
United States District Court - District of Oregon - Portland
Division

1000 SW Third Avenue, Suite 740
Portland, OR 97204